NANCY HOFFMEIER ZAMORA (State Bar No. 137326)
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, California 90071
(213) 488-9411 FAX: (213) 488-9418
e-mail: zamora3@aol.com

Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>HOVHANNES NAZARYAN,<br><br>Debtor. | Case No. 1:25-bk-10617-MB<br><br>Chapter 7<br><br>OPPOSITION TO MOTION TO COMPEL ABANDONMENT OF REAL PROPERTY; DECLARATION IN SUPPORT<br><br>DATE: May 13, 2025<br>TIME: 11:00 a.m.<br>CTRM: 303 |

TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, UNITED STATES TRUSTEE, DEBTOR, DEBTOR'S COUNSEL, AND OTHER INTERESTED PARTIES:

Nancy Hoffmeier Zamora, Chapter 7 Trustee ("Trustee") of the estate (the "Estate") in the above-referenced case (the "Case") of debtor Hovhannes Nazaryan ("Debtor"), files this opposition (the "Opposition") to the Notice of Motion and Motion to Compel Abandonment of Estate Property (the "Motion") [dkt. no. 14] filed by Debtor.

Pursuant to Local Bankruptcy Rule 9013-1(g), any reply to the Opposition must be filed with the Court and served on Trustee no later than 7 days prior to the hearing on the Motion.

. . . . .

## I. INTRODUCTION

Trustee is administering the subject real property commonly known as 24366 La Masina Court, Calabasas, California 91302 (the "Real Property") that is property of the Estate and the subject of the Motion. Debtor offers no admissible evidence to support the Motion.

Trustee is employing The ONE Luxury Properties ("Estate Broker") to assist Trustee in marketing and sale of the Real Property (see Application by Nancy Hoffmeier Zamora, Chapter 7 Trustee, for Approval to Employ The ONE Luxury Properties as Real Estate Broker (the "Broker Employment Application") [dkt. no. 12]). Trustee is employing The Law Office of Brad S. Sures ("Special Counsel") to assist Trustee with landlord-tenant law, legal process to terminate any potential rights that two "invitees" or "guests" may claim, and related legal issues for administration of the Real Property (see Application by Nancy Hoffmeier Zamora, Chapter 7 Trustee, for Approval to Employ The Law Office of Brad S. Sures as Special Counsel (the "Special Counsel Employment Application") [dkt. no. 19]).

Trustee has the cooperation and approval of the senior judgment lienholder Los Angeles Police Federal Credit Union ("Senior Lienholder"), second trust deed holder Mehran Javaherian ("Second TD Holder"), and junior judgment lienholder United States ("Junior Lienholder") to market and sell the Real Property, including voluntary reductions in payoff demands and "carve-outs" for the Estate. Trustee also intends to communicate with first trust deed holder Amwest Funding Corp. and/or Mortgage Electronic Registration Systems, Inc. (collectively "First TD Holder")

regarding marketing and sale of the Real Property. Senior Lienholder, Second TD Holder, and Junior Lienholder have agreed to consent to Trustee's sale and to negotiate short sale terms that include reduced payoff demands and "carve-outs" for the Estate from the payoff balances otherwise owed.

Trustee anticipates that the negotiated terms, subject to the Court's approval, will include:

1. payment of real property taxes, homeowner association fees, and closing costs, including, but not limited to, the broker commissions of two percent for the Estate's broker and up to two percent for the broker representing the Court-approved buyer, title fees, escrow fees, city and county transfer taxes, insurance premiums, clean-up and maintenance costs, locksmith charges, and utilities; and

2. reduced payoffs for the lienholders and "carve-outs" for the Estate.

Trustee estimates that the "carve-outs" for the Estate will be divided between administrative fees and expenses and a distribution to allowed, timely-filed unsecured claims.

Trustee intends to sell the Real Property free and clear of liens pursuant to 11 U.S.C. §363 with disbursements to the lienholders in reduced payoff amounts subject to negotiation with Trustee and approval by the Court.

## II. FACTS

1. On April 14, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case. Trustee is the duly appointed interim Chapter 7 Trustee for the Estate and expects to become the

permanent Chapter 7 Trustee at the initial meeting of creditors on May 14, 2025.

2. The assets of the Estate include the Real Property.

3. Debtor did not reside in the Real Property on the Petition Date as Trustee is informed that Debtor is incarcerated in federal prison in Texarkana, Texas and surrendered himself to federal custody in or about December 2024 to serve a five year prison sentence for conspiracy to commit bank fraud to which Debtor pled guilty in case no. 2:22-cr-00041-JAK in the Central District of California.

4. Trustee filed the Broker Employment Application and the Special Counsel Employment Application.

5. Trustee is informed that two "invitees" or "guests" were staying at the Real Property as of the Petition Date, specifically, Ani Verdiyan and Zarik Minasyan ("Invitees"). Trustee is informed that Invitees have no lease for the Real Property.

6. Trustee requires the assistance of special counsel to assist her with any legal process necessary to ensure that Invitees vacate the Real Property and remove their personal property, if any, from the premises so that Trustee, with the assistance of Broker, can market and sell the Real Property vacant.

7. On April 18, 2025, Trustee filed a complaint pursuant to 11 U.S.C. §363(h) (the "Complaint") against Debtor's brother, Artur Nazaryan ("Defendant"), who is a joint tenant with Debtor on title for the Real Property, commencing the adversary proceeding assigned 1:25-ap-01025-MB (the "Adversary Proceeding"). On April 19, 2025, Trustee caused the Complaint and related summons to be served on Defendant at the federal penitentiary in Atwater, California where

Trustee is informed Defendant is serving a five-year sentence for conspiracy to commit bank fraud.

8. Trustee is communicating with counsel for Senior Lienholder, Second TD Holder, and Junior Lienholder regarding their cooperation with, and approval of, Trustee's marketing and sale of the Real Property and negotiating voluntary reductions in payoff demands and "carve-outs" for the Estate. Trustee also intends to communicate with First TD Holder regarding marketing and sale of the Real Property.

9. Trustee anticipates that the negotiated terms, subject to the Court's approval, will include:

a. payment of real property taxes, homeowner association fees, and closing costs, including, but not limited to, the broker commissions of two percent for the Estate's broker and up to two percent for the broker representing the Court-approved buyer, title fees, escrow fees, city and county transfer taxes, insurance premiums, clean-up and maintenance costs, locksmith charges, and utilities; and

b. reduced payoffs for the lienholders and "carve-outs" for the Estate.

10. Trustee estimates that the "carve-outs" for the Estate will be divided between administrative fees and expenses and a distribution to allowed, timely-filed unsecured claims.

11. Trustee intends to sell the Real Property free and clear of liens pursuant to 11 U.S.C. §363 with disbursements to the lienholders in reduced payoff amounts subject to negotiation with Trustee and approval by the Court.

12. Debtor scheduled the value of the Real Property in his schedules at $2,800,000.00. Trustee's investigation, including the professional advice of her proposed broker, resulted in the conclusion that the Real Property has a value of approximately $4,850,000.00.

13. Debtor only listed secured debts of First TD Holder and Second TD Holder in the aggregate amount of $4,200,000.00 in Debtor's schedule D.

14. As of the Petition Date, Debtor had engaged a realtor who had the Real Property listed on the multiple listing service with an asking price of $2,800,000.00 ("Debtor's MLS Listing"). Trustee made multiple demands on Debtor's realtor and Debtor's bankruptcy counsel before Debtor's realtor finally cancelled Debtor's MLS Listing.

15. Trustee's business judgment is that the marketing and sale of the Real Property will provide the funds from the negotiated carve-outs for the benefit of the Estate and the holders of allowed, unsecured claims.

16. As of the Petition Date, Trustee immediately commenced her administration of the Real Property as an asset of the Estate. Trustee investigated the value of the Real Property with the assistance of Trustee's real estate broker. Trustee obtained and analyzed real property and other documents. Trustee acquired insurance for the Real Property. Special Counsel, on behalf of Trustee, commenced legal process to obtain possession of the Real Property as vacant. Trustee communicated with the management company for the homeowner association and its private security company that controls access to the guard-gated community where the

Real Property is located. Trustee controls access to the Real Property through established security controls and protocols. Trustee intends to change locks at the Real Property and commence marketing efforts once Trustee and her professionals confirm the Real Property is vacant.

## III. ARGUMENT

### A. The Real Property Does Have Value for, and is Not a Burden to, the Estate

The Motion seeks abandonment of the Real Property arguing that it is of inconsequential value, and is a burden, to the Estate. The Motion is not supported by any admissible evidence.

Based on the facts and law discussed in this Opposition, Trustee demonstrates there is value for the Estate that will benefit unsecured creditors. Trustee's rebuttal in this Opposition should prevail. *See, In re Paolella*, 79 B.R. 607, 610 (Bankr. E.D. Penn. 1987) (movant must set out a *prima facie* case for abandonment; opponent can rebut *prima facie* case including, e.g., showing of equity or some other form of value or benefit to the bankruptcy estate that would accrue by retention of the subject property (citations omitted)).

This Opposition shows that the carve-outs for the Estate will benefit unsecured creditors.

Pursuant to 11 U.S.C. §704(a)(1), Trustee has a fiduciary duty to administer the valuable assets in this Case for the benefit of creditors. Section 704(a)(1) of the Bankruptcy Code provides that the trustee shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as possible as is compatible with the best interests

of parties in interest". The Trustee Handbook specifically states in Chapter 4. "Duties of a Trustee in the Administration of a Case", A. Introduction, that "[t]he principal duty of the trustee is to collect and liquidate the property of the estate and to distribute the proceeds to creditors." Trustee has a fiduciary duty to maximize assets of the Estate. *See Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 421 (9th Cir. BAP 2003). The trustee's "primary job is to marshal and sell the assets, so that those assets can be distributed to the estate's creditors." *In re KVN Corp.*, 514 B.R. 1, 5 (9th Cir. BAP 2014) (citation omitted).

The Motion does not meet the requirement of 11 U.S.C. §554(b) that the Real Property is burdensome to the Estate and of inconsequential value. To the contrary, Trustee's administration of the Real Property will generate funds from the carve-outs that will benefit unsecured creditors. Trustee acknowledges the need to administer assets for the benefit of unsecured creditors and provide a distribution from the carve-outs.

This Opposition is filed only two weeks after the Petition Date and, at this early stage of the Case, it is not possible for Trustee to estimate the total amount of the carve-outs as Trustee's negotiations with lienholders are still underway. Trustee intends to propose that approximately fifteen percent of the total amount of the carve-outs be committed to allowed, timely-filed unsecured claims in the Case. However, Trustee reserves the right to modify the amounts of such proposed distributions depending upon how the Case progresses, what fees and expenses are incurred by the Estate, and what other Estate assets may be discovered and administered.

In seeking bankruptcy relief and a discharge of his debts, Debtor relinquished his standing to control the Real Property. Debtor assumed the risk that Trustee would sell the Real Property and Debtor would receive any claimed exemption in the Real Property only to the extent there are sale proceeds remaining after costs of sale and liens are paid. *See generally, Babaee v. Marshack (In re Babaee)* 2022 Bankr. LEXIS 1713 (9th Cir. BAP, June 17, 2022).

By the Motion, Debtor admits that there is no equity to which his claimed exemption can apply. Debtor's claimed exemption does not attach to the "carve-outs" that Trustee negotiates for the benefit of the Estate. *See In re Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D. Cal. 2013) and in *In re Brown*, 2015 Bankr. LEXIS 1026* (Bankr. E.D. Mich. 2015).

The court in *In re Bunn-Rodemann* sustained the chapter 7 trustee's objection to debtor's claim of exemption in real property. The court's decision explains, at length, the short sale process by the bankruptcy trustee and various considerations. In sum, the court concludes that the debtor "cannot exempt (or appropriate) the sales proceeds encumbered by the creditor's lien . . . ." 491 B.R. at 137.

The court in *In re Brown* denied the debtor's motion for a stay pending appeal of a sale order involving a short sale by the chapter 7 trustee. The debtor attempted to exempt her real property but the amount owed for the secured consensual liens exceeded the value of the property both on the petition date and the date of entry of the court's sale order. The bankruptcy court determined that there was virtually no likelihood that debtor could prevail on her argument that the first mortgagee's agreement to a

short sale would provide the debtor with equity to exempt based on the Sixth Circuit Court of Appeals' rejection of such an argument in a similar case. See *In re Baldridge*, 553 Fed.Appx. 598 (6th Cir. 2014) (6th Circuit concluded that the sale and carve-out proposed left the junior lienholder partially unsatisfied; because debtor's interest in the property is subject to the creditors' liens on the property, debtor's exemption could not attach to value from the property until the creditors' liens were satisfied).

*See, also*, *In re Diener*, 2015 Bankr. LEXIS 2235* (Bankr. N.D. Ga. 2015) (holding where a chapter 7 trustee and a junior lienholder's carve-out agreement provided that each would receive some of the proceeds from the section 363 sale after payment of the first priority lien, debtor's state law exemption did not apply to the funds received by the estate under the carve-out agreement; debtor's exemption could not have attached to the property as of the petition date because it was wholly underwater, and the trustee's carve-out represented the value added from trustee's efforts and powers, not the value of the property itself). and *In re Stark*, 2020 Bankr. LEXIS 2520 (Bankr. E.D. N.Y. 2020) (holding chapter 7 trustee has the authority to negotiate a "give-up" with a mortgagee for the benefit of the estate; the funds are not properly characterized as proceeds of the sale of real property, but rather are attributable to the rights and powers of the trustee granted under the Bankruptcy Code and exercised for the benefit of the estate; thus, debtor cannot lay claim to those funds on account of debtor's exemption).

. . . . .

. . . . .

## IV. CONCLUSION

Trustee has shown that the Real Property is not of inconsequential value and is not a burden to the Estate. To the contrary, Trustee's sale of the Real Property, with the short sale terms being negotiated with, and approved by, the lienholders, will generate funds from the carve-outs for the Estate.

Trustee respectfully requests that the Court deny the Motion, with prejudice, allow Trustee to proceed with administration of the Case and the Real Property, and include in the Court's order any other relief the Court deems necessary.

DATED: April 27, 2025

/s/Nancy Hoffmeier Zamora
Nancy Hoffmeier Zamora
Chapter 7 Trustee

**DECLARATION OF NANCY HOFFMEIER ZAMORA**

I, Nancy Hoffmeier Zamora, declare that:

1. I am the duly-appointed, qualified, and acting interim chapter 7 trustee in the above-entitled case. I expect to become the permanent Chapter 7 Trustee at the Section 341(a) meeting of creditors noticed for May 14, 2025.

2. The following is within my own personal knowledge and, if called upon to testify, I could and would testify competently thereto. The capitalized terms used herein have the meanings ascribed to them in the Opposition to Motion to Compel Abandonment of Estate Property (the "Opposition") to which this declaration is attached unless otherwise defined.

3. I reviewed the docket, pleadings filed in the Case, the claims register, and other documents related to the subject of the Motion and the Opposition.

4. On the Petition Date, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case.

5. The assets of the Estate include the Real Property.

6. Debtor did not reside in the Real Property on the Petition Date as I am informed that Debtor is incarcerated in federal prison in Texarkana, Texas and surrendered himself to federal custody in or about December 2024 to serve a five year prison sentence for conspiracy to commit bank fraud to which Debtor pled guilty in case no. 2:22-cr-00041-JAK in the Central District of California.

7. I filed the Broker Employment Application and the Special Counsel Employment Application.

8. I am informed that the two Invitees were staying at the Real Property as of the Petition Date. I am informed that Invitees have no lease for the Real Property.

9. I require the assistance of special counsel to assist me with any legal process necessary to ensure that Invitees vacate the Real Property and remove their personal property, if any, from the premises so that I can market the Real Property, with the assistance of the Estate's broker, and sell the Real Property vacant.

10. On April 18, 2025, I filed the Complaint against Defendant, a joint tenant with Debtor on title for the Real Property, commencing the Adversary Proceeding. On April 19, 2025, I caused the Complaint and related summons to be served on Defendant at the federal penitentiary in Atwater, California where I am informed Defendant is serving a five-year sentence for conspiracy to commit bank fraud.

11. I am communicating with counsel for Senior Lienholder, Second TD Holder, and Junior Lienholder regarding their cooperation with, and approval of, my marketing and sale of the Real Property and negotiating voluntary reductions in payoff demands and "carve-outs" for the Estate. I also intend to communicate with First TD Holder regarding marketing and sale of the Real Property.

12. I anticipate that the negotiated terms, subject to the Court's approval, will include:

a. payment of real property taxes, homeowner association fees, and closing costs, including, but not limited to, the broker commissions of two percent for the Estate's broker and up to two percent for the broker representing the Court-approved buyer, title

fees, escrow fees, city and county transfer taxes, insurance premiums, clean-up and maintenance costs, locksmith charges, and utilities; and

b. reduced payoffs for the lienholders and "carve-outs" for the Estate.

13. I estimate that the "carve-outs" for the Estate will be divided between administrative fees and expenses and a distribution to allowed, timely-filed unsecured claims.

14. I intend to sell the Real Property free and clear of liens pursuant to 11 U.S.C. §363 with disbursements to the lienholders in reduced payoff amounts subject to negotiation with me and approval by the Court.

15. Debtor scheduled the value of the Real Property in his schedules at $2,800,000.00. My investigation, including the professional advice of my proposed broker, resulted in the conclusion that the Real Property has a value of approximately $4,850,000.00.

16. Debtor only listed secured debts of First TD Holder and Second TD Holder in the aggregate amount of $4,200,000.00 in Debtor's schedule D.

17. As of the Petition Date, Debtor's MLS Listing was active. I made multiple demands on Debtor's realtor and Debtor's bankruptcy counsel before Debtor's realtor finally cancelled Debtor's MLS Listing.

18. My business judgment is that the marketing and sale of the Real Property will provide the funds from the negotiated carve-outs for the benefit of the Estate and the holders of allowed, unsecured claims.

19. As of the Petition Date, I immediately commenced my administration of the Real Property as an asset of the Estate. I investigated the value of the Real Property with the assistance of my real estate broker. I obtained and analyzed real property and other documents. I acquired insurance for the Real Property. Special Counsel, on my behalf, commenced legal process to obtain possession of the Real Property as vacant. I communicated with the management company for the homeowner association and its private security company that controls access to the guard-gated community where the Real Property is located. I control access to the Real Property through established security controls and protocols. I intend to change locks at the Real Property and commence marketing efforts once my professionals and I confirm the Real Property is vacant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 27, 2025 at Los Angeles, California.

Nancy Hoffmeier Zamora

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

U.S. Bank Tower, 633 West 5th Street, Suite 2600, Los Angeles, CA 9007

A true and correct copy of the foregoing document entitled (*specify*):
**OPPOSITION TO MOTION TO COMPEL ABANDONMENT OF REAL PROPERTY; DECLARATION IN SUPPORT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 28, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee: United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov
Trustee: Nancy Zamora, zamora3@aol.com, nzamora@ecf.epiqsystems.com
Counsel for Debtor: Anita Khachikyan, ak@khachlaw.com
Counsel for Judgment Lien Holder: Bruce P. Needleman, attybpn@aol.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On April 28, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Hovhannes Nazaryan, 24366 La Masina Court, Calabasas, CA 91302
U.S Trustee: Eryk Escobar, Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017
Judge: The Honorable Martin Barash, U.S. Bankruptcy Court, 21041 Burbank Boulevard, Suite 342, Woodland Hills, CA 91367

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 28, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 28, 2025 | Cynthia Casas | /s/ Cynthia Casas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |