NANCY HOFFMEIER ZAMORA (State Bar No. 137326)
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, California   90071
(213) 488-9411   FAX:   (213) 488-9418
e-mail:  zamora3@aol.com

Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| In re | ) | Case No. 1:25-bk-10617-MB |
|---|---|---|
| | ) | |
| HOVHANNES NAZARYAN, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | MOTION FOR ORDER |
| | ) | AUTHORIZING TRUSTEE TO SELL |
| | ) | REAL PROPERTY FREE AND |
| | ) | CLEAR OF LIENS AND |
| | ) | INTERESTS (EXCEPT L.A. |
| | ) | COUNTY HERO LIEN), SUBJECT |
| | ) | TO OVERBID, AND APPROVING |
| | ) | SURCHARGE FOR |
| | ) | ADMINISTRATIVE FEES AND |
| | ) | EXPENSES PER 11 U.S.C. |
| | ) | §506(c); MEMORANDUM OF |
| | ) | POINTS AND AUTHORITIES; |
| | ) | DECLARATIONS IN SUPPORT |
| | ) | |
| | ) | [FILED CONCURRENTLY WITH |
| | ) | NOTICE OF MOTION FOR ORDER |
| | ) | AUTHORIZING TRUSTEE TO SELL |
| | ) | REAL PROPERTY FREE AND |
| | ) | CLEAR OF LIENS AND |
| | ) | INTERESTS (EXCEPT L.A. |
| | ) | COUNTY HERO LIEN), SUBJECT |
| | ) | TO OVERBID, AND APPROVING |
| | ) | SURCHARGE FOR |
| | ) | ADMINISTRATIVE FEES AND |
| | ) | EXPENSES PER 11 U.S.C. |
| | ) | §506(c)] |
| | ) | |
| | ) | DATE:  July 16, 2025 |
| | ) | TIME:  11:00 a.m. |
| | ) | CTRM:  303 |
| | ) |        21041 Burbank Blvd. |
| | ) |        Woodland Hills, CA |
| | ) | [hearing in person or by |
| | ) | ZoomGov] |

Nazaryan/sale motion

**TABLE OF CONTENTS**

PAGE

MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . .  1.

  I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . .  1.

  II.     LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW .  2.

          A.   LIENS. . . . . . . . . . . . . . . . . . . . .  2.

          B.   PROPERTY TAX . . . . . . . . . . . . . . . . .  4.

          C.   HOA FEES . . . . . . . . . . . . . . . . . . .  4.

          D.   BROKER COMMISSIONS AND OTHER CLOSING COSTS . .  5.

  III.    LIENS NOT TO BE PAID FROM SALE ESCROW . . . . . . .  6.

          A.   HERO LIEN. . . . . . . . . . . . . . . . . . .  6.

          B.   U.S. RESTITUTION LIENS . . . . . . . . . . . .  6.

          C.   UNSECURED PORTION OF DEBT RELATED TO SECOND TD  7.

  IV.     ADMINISTRATIVE FEES AND EXPENSES TO PRESERVE AND

          DISPOSE OF COLLATERAL TO BE PAID FROM SALE ESCROW

          AND RETAINED FUNDS TO BE HELD AND PAID TO ESTATE FROM

          SECOND TD PAYMENT PER 11 U.S.C. §506(c)(c). . . . .  7.

  V.      ADVERSARY PROCEEDING AGAINST DEFENDANT ARTUR PER

          11 U.S.C. §363(h) . . . . . . . . . . . . . . . . .  9.

  VI.     CLAIMS AND TAXES. . . . . . . . . . . . . . . . . .  9.

  VII.    FINDING OF GOOD FAITH PURCHASER . . . . . . . . . . 10.

  VIII.   PROPOSED OVERBID PROCEDURE. . . . . . . . . . . . . 10.

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . 12.

  I.   FACTS. . . . . . . . . . . . . . . . . . . . . . . . . 12.

     A.   GENERAL BACKGROUND. . . . . . . . . . . . . . . . . 12.

     B.   THE REAL PROPERTY . . . . . . . . . . . . . . . . . 12.

     C.   MARKETING, REAL ESTATE BROKERS, BROKER COMMISSIONS . 14.


Nazaryan/sale motion                    i

E.   REQUEST FOR SURCHARGE PER 11 U.S.C. §506(c) . . . . 18.

F.   CLAIMS AND TAXES. . . . . . . . . . . . . . . . . . . 20.

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 20.

A.   DEBTOR'S INTEREST IN THE REAL PROPERTY IS PROPERTY
OF THE ESTATE AND TRUSTEE HAS AUTHORITY TO SELL
THE PROPERTY IN ITS ENTIRETY PURSUANT TO
11 U.S.C §363(h). . . . . . . . . . . . . . . . . . 20.

B.   TRUSTEE'S STATUTORY DUTIES AND SALE OF
REAL PROPERTY . . . . . . . . . . . . . . . . . . . 21.

C.   THE COURT HAS AUTHORITY TO APPROVE THE SALE OF THE
REAL PROPERTY FREE AND CLEAR OF ANY INTEREST AND
LIENS PURSUANT TO 11 U.S.C. §§363(b) AND (f). . . . 23.

D.   SALE OF THE REAL PROPERTY FREE AND CLEAR OF LIENS IS
IN THE BEST INTEREST OF CREDITORS OF THE ESTATE . . 29.

E.   NOTICE OF THE SALE IS ADEQUATE. . . . . . . . . . . 29.

F.   BUYER, OR HIGHEST BIDDER, SHOULD BE DEEMED A "GOOD
FAITH PURCHASER" PURSUANT TO 11 U.S.C. §363(m). . . 30.

G.   THE BANKRUPTCY COURT HAS THE AUTHORITY TO IMPLEMENT
THE PROPOSED OVERBID PROCEDURE. . . . . . . . . . . 31.

H.   THE BROKER COMMISSIONS SHOULD BE APPROVED . . . . . 32.

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 32.

DECLARATION OF BEHNAZ TAVAKOLI. . . . . . . . . . . . . . . . 35.

DECLARATION OF AVI MALATIAHO . . . . . . . . . . . . . . . . . 38.

DECLARATION OF NANCY HOFFMEIER ZAMORA . . . . . . . . . . . . . 40.

EXHIBIT A -- LEGAL DESCRIPTION

EXHIBIT B -- AGREEMENT

EXHIBIT C -- ESTIMATED CLOSING STATEMENT

EXHIBIT D -- PRELIMINARY TITLE REPORT

**TABLE OF AUTHORITIES**

CASES                                                                                PAGE

*In re Abbotts Dairies of Pennsylvania, Inc.,*

   788 F.2d 143 (3d Cir. 1986). . . . . . . . . . . . . . . . 30.

*In re Alves*, 52 B.R. 353 (Bankr. D.R.I. 1985) . . . . . . . . . . 22.

*In re Baldridge*, 553 Fed.Appx. 598 (6th Cir. 2014). . . . . . 24.

*In re Boston Generating, LLC,*

   440 B.R. 302 (Bankr. S.D. N.Y. 2010) . . . . . . . . 27, 28.

*In re Brown*, 2015 Bankr. LEXIS 1026* (Bankr. E.D. Mich. 2015) 24.

*In re Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D. Cal. 2013) . 24.

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC),*

   391 B.R. 25 (BAP 9th Cir. 2008) . . . . . . . . . 27, 28.

*Community Thrift & Loan v. Suchy (In re Suchy),*

   786 F.2d 900 (9th Cir. 1985) . . . . . . . . . . . . . . 30.

*In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982) . . . 31.

*In re Cummins*, 15 B.R. 893, 895 (BAP 9th Cir. 1981) . . . . 32.

*In re Diener*, 2015 Bankr. LEXIS 2235* (Bankr. N.D. Ga. 2015). 24.

*Ewell v. Diebert (In re Ewell)*, 958 F.2d 276 (9th Cir. 1992) 30.

*In re Hassen Imps. P'ship,*

   502 B.R. 851 (Dist. C.D. Cal. 2013) . . . . . . . . . 28.

*In re Jolan,* 403 B.R. 866 (Bankr. W.D. Wash. 2009). . . 27, 28.

*In re Onouli-Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988) . 29.

*Matter of Phoenix Steel Corp.*, 82 B.R. 334(Bankr. D.Del. 1987) 22.

*In re Stark*, 2020 Bankr. LEXIS 2520 (Bankr. E.D. N.Y. 2020) 24.

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830

   (Bankr. C.D. Cal. 1991). . . . . . . . . . . . . . . . . 22.

FEDERAL STATUTES

11 U.S.C. §105(a) . . . . . . . . . . . . . . . . . . . . . . 31.

11 U.S.C. §327. . . . . . . . . . . . . . . . . . . . . . . . 33.

11 U.S.C. §341(a) . . . . . . . . . . . . . . . . . . . . . . 12.

11 U.S.C. §363. . . . . . . . . . . . . . . . . . . . 22, 23, 24.

11 U.S.C. §363(b) . . . . . . . . . . . . . . . . . 1, 21, 23, 27.

11 U.S.C. §363(b)(1). . . . . . . . . . . . . . . . . . . 22, 31.

11 U.S.C. §363(f) . . . . . . . . . . . . . . . . . . . 1, 23, 25.

11 U.S.C. §363(f)(2). . . . . . . . . . . . . . . . . . 25, 26, 27.

11 U.S.C. §363(f)(5). . . . . . . . . . . . . . . . 2, 7, 26, 27, 28.

11 U.S.C. §363(h) . . . . . . . 1, 9, 12, 14, 20, 21, 22, 23, 24.

11 U.S.C. §363(m) . . . . . . . . . . . . . 1, 7, 10, 30, 31, 33, 34.

11 U.S.C. §506(a) . . . . . . . . . . . . . . . . . . 1, 2, 7, 26.

11 U.S.C. §506(a)(1). . . . . . . . . . . . . . . . . . . . . 27.

11 U.S.C. §506(c) . . . . . 1, 2, 4, 7, 8, 9, 13, 17, 18, 20, 21.

11 U.S.C. §541(a) . . . . . . . . . . . . . . . . . 12, 15, 20, 33.

11 U.S.C. §704(a)(1). . . . . . . . . . . . . . . . . . . 21, 33.

11 U.S.C. §1129 . . . . . . . . . . . . . . . . . . . . . . . 27.

STATE STATUTES

California Streets & Highways Code §5898.30 . . . . . . . . . 6.

California Streets & Highways Code §5898.32 . . . . . . . . . 6.

RULES

Federal Rule of Bankruptcy Procedure 6004(h). . . . . . . . . 34.

### I.  **INTRODUCTION**

Nancy Hoffmeier Zamora, Chapter 7 Trustee ("Trustee") of the bankruptcy estate (the "Estate") in the above-captioned chapter 7 bankruptcy case (the "Case") of debtor Hovhannes Nazaryan ("Debtor") hereby respectfully moves this Court for an order approving sale of that certain residential real property commonly known as 24366 La Masina Court, Calabasas, California 91302, identified by Los Angeles County Assessor's Parcel Number 2069-033-066 with the legal description that is attached as  Exhibit A to the Declaration of Nancy Hoffmeier Zamora (the "Trustee Declaration") attached hereto and incorporated herein by reference (the "Real Property"), free and clear of any interests and liens pursuant to 11 U.S.C. §§363(b), (f), (h) and (m) and 506(a) and (c) (except the HERO Lien (defined below)), and on an "AS-IS, WHERE-IS" basis, to Avi Malatiaho and Minoo Kahen ("Buyer") for a sales price of $4,675,000.00 (the "Sales Price") through escrow for sale of the Real Property (the "Sale Escrow") and on the other terms and conditions set forth in that certain Purchase and Sale Agreement and Escrow Instructions (Residential Property) dated May 28, 2025, as modified by the Request for Repair No. 1 dated June 5, 2025, the Amendment of Existing Agreement Terms No. 1 dated June 5, 2025, and the Amendment of Existing Agreement Terms No. 2 dated June 23 and 24, 2025 (collectively, the "Agreement"), or to the highest qualified bidder pursuant to the overbid procedure described below ("Highest Bidder").

A true and correct copy of the Agreement is attached as Exhibit B to the Trustee Declaration attached hereto and incorporated herein by reference.

Nazaryan/sale motion                    1.

This Motion is based on the notice of motion and the supplemental notice (collectively, the "Notice") filed with this Court and served on Debtor, Debtor's counsel, Defendant Artur (defined below), the United States Trustee, all creditors, and other interested parties, and on the memorandum of points and authorities and the declarations, including exhibits, attached hereto.

## II.   **LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW**

Trustee also moves for approval and authorization to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer, or to Highest Bidder, and to pay from the Sale Escrow at Mission Escrow ("Mission") debts secured by the liens recorded against the Real Property (except the HERO Lien) as modified by the LAPFCU Stipulation (defined below) and the LAPFCU Order (defined below), as limited by the amount of the sale proceeds, and subject to reductions for 11 U.S.C. §506(c) fees and expenses (all as described below); the Property Tax (defined below), the Broker Commissions (defined below), the HOA Fees (defined below), and the Other Closing Costs (defined below).

**A.   LIENS**

Trustee proposes to pay through the Sale Escrow the debt secured by the following liens, (a) subject to the LAPFCU Stipulation and the LAPFCU Order, (b) as limited by the amount of the sale proceeds that may result in certain liens being partially or fully undersecured pursuant to 11 U.S.C. §§506(a) and 363(f)(5), and (c) subject to reductions for 11 U.S.C. §506(c) fees and expenses as approved by the Court:

**1.   LAPFCU Lien:** the debt secured by a certified copy of a judgment or an abstract thereof, recorded April 12, 2016, as

Nazaryan/sale motion                    2.

instrument no. 20160406059 of Official Records in the Office of the Recorder of Los Angeles County, California ("Official Records") for creditor Los Angeles Police Federal Credit Union ("LAPFCU") related to Los Angeles County Superior Court case no. LC087239, for the amount of $123,685.75 and any other amounts due thereunder (the "LAPFCU Lien"), with the current payoff of $128,382.31 (the "Total LAPFCU Payoff") that is to be divided $50,000.00 to LAPFCU (the "LAPFCU Payment") and $78,382.31 to the Estate (the "Estate Payment") as set forth in that certain Stipulation By and Between Trustee and Senior Lienholder LAPFCU Regarding Consent to Sale of Real Property, Payoff from Sale of Real Property, and Estate Payment (the "LAPFCU Stipulation") [dkt. 43] and that certain order approving the LAPFCU Stipulation entered by the Court on June 13, 2025 (the "LAPFCU Order") [dkt. 57], referred to at exception no. 19 in the Preliminary Title Report identified by order number 7255546, dated as of April 7, 2025 (the "PTR") prepared by First American Title Company ("First American") attached as Exhibit D to the Trustee Declaration and incorporated herein by reference);

**2.   First TD:** the debt secured by the first deed of trust (the "First TD") in the original principal amount of $3,000,000.00 recorded on January 4, 2022 as instrument no. 20220010067 of Official Records naming lender as AmWest Funding Corp. ("AmWest") and beneficiary as Mortgage Electronic Registration Systems, Inc. ("MERS" collectively with AmWest "First TD Holder) in the estimated payoff amount of approximately $3,064,520.11 as of May 30, 2025 with per diem interest thereafter of $322.91 that is estimated to total approximately $3,085,186.35 as of July 31, 2025, subject to a final payoff demand (the "First TD Payoff") to be provided by AmWest, or

Nazaryan/sale motion                    3.

its counsel, to Mission, referred to at exception no. 16 in the PTR; and

**3.   Second TD:**  the debt secured by the second deed of trust (the "Second TD") in the original principal amount of $1,200,000.00 recorded on July 13, 2023 as instrument no. 20230460230 of Official Records for the benefit of Mehran Javaherian ("Second TD Holder") in the estimated payoff amount of approximately $1,678,645.60 as of May 15, 2025, subject to and limited by (1) a final payoff demand (the "Second TD Payoff") to be provided by Second TD Holder, or his counsel, to Mission,  (2) the reduction for administrative fees and expenses to be paid to the Estate per 11 U.S.C. §506(c) as approved by the Court, and (3) the sale proceeds available after paying the LAPFCU Payment, the Estate Payment, the First TD Payoff, the Property Tax, the HOA Fees, the Broker Commissions, and the Other Closing Costs (resulting in estimated balance available of approximately $1,171,051.01 (the "Second TD Payment")), referred to at exception no. 17 in the PTR.

**B.   PROPERTY TAX**

Trustee proposes to pay through the Sale Escrow delinquent and pro-rated real property taxes owed to the County of Los Angeles estimated at $97,528.34 (the "Property Tax") based on information contained in the PTR and the estimated closing statement prepared by Mission (the "Estimated Closing Statement") (a true and correct copy of the Estimated Closing Statement is attached as Exhibit C to the Trustee Declaration and incorporated herein by reference).

**C.   HOA FEES**

Trustee proposes to pay through the Sale Escrow delinquent and current homeowner association fees, document fees, and transfer fees

Nazaryan/sale motion                                    4.

estimated at $4,078.54 (the "HOA Fees") to be paid to Ross Morgan & Company, Inc. on behalf of Vista Pointe Homeowners Association and Calabasas Park Homeowners Association (collectively "HOA"), subject to a final payoff demand to be provided by HOA to Mission.

**D.    BROKER COMMISSIONS AND OTHER CLOSING COSTS**

Trustee proposes to pay through the Sale Escrow seller's closing costs including, but not limited to, the broker commissions (the "Broker Commissions") that total three percent (3%) of the Sales Price of $4,675,000.00 ($140,250.00) or the Highest Bid, to be paid one and one-half percent (1.5%) to The ONE Luxury Properties ("Estate Broker") and one and one-half percent (1.5%) to the broker representing Buyer or Highest Bidder ("Buyer Broker"); and the other closing costs comprised of insurance premium, pool service, repair charges, locksmith charges, gardening/hauling/clean-up services, utility payments, and other costs advanced by and to be reimbursed to Zamora & Hoffmeier, A Professional Corporation ("Z&H"), city transfer taxes, county transfer taxes, escrow fees, title fees, recording fees, and fees for required reports, all to be paid through the close of the Sale Escrow (collectively, the "Other Closing Costs") (currently estimated to be approximately $48,253.45).

Trustee reserves all rights to object to the validity, scope, and priority of all disputed liens, claims and/or interests, if necessary. The Estate Payment is a voluntary "carve-out" by LAPFCU from the LAPFCU Payoff and, consequently, is not subject to attachment by any liens or by any exemption claimed by Debtor. The Real Property will be sold free and clear of all liens, claims and/or interests, except the HERO Lien that Buyer is assuming.

### III.   LIENS NOT TO BE PAID FROM SALE ESCROW

**A.   HERO LIEN**

There exists that certain Notice of Assessment and Payment of Contractual Assessment Required for the L.A. County HERO Program (the "L.A. HERO Program") recorded on June 28, 2017 as instrument no. 20170721586 of Official Records that constitutes a voluntary contractual assessment lien pursuant to Streets & Highways Code §5898.30 and is recorded pursuant to Streets & Highways Code §5898.32 (the "HERO Lien") that secures  debt for the original disbursement not to exceed $197,680.00, together with fees and capitalized interest thereon for a total contractual assessment in the amount of $229,268.09, and that has a current prepayment balance of approximately $184,750.25, referred to at exception no. 3 in the PTR.  Buyer agrees to assume the HERO Lien as its terms permit.

**B.   U.S. RESTITUTION LIENS**

There exists joint and several debt of Debtor and Artur Nazaryan ("Defendant Artur") secured by a Notice of Lien for Fine and/or Restitution Pursuant to Antiterrorism and Effective Death Penalty Act of 1996 in favor of the United States, recorded July 8, 2024, as instrument no. 20240443829 of Official Records, for the amount of $1,289,264.95, and a Notice of Lien for Fine and/or Restitution Pursuant to Antiterrorism and Effective Death Penalty Act of 1996 in favor of the United States ("U.S."), recorded August 14, 2024, as instrument no. 20240546662 of Official Records, for the amount of $1,289,264.95 (collectively the "U.S. Restitution Liens"), referred to exception nos. 18 and 20, in the PTR.

Based on the Sales Price of $4,675,000.00 and the amounts of the Property Tax and the secured liens senior to the U.S.

Restitution Liens, there is no remaining value in the Real Property collateral to which the debt secured by the U.S. Restitution Liens can attach. The debt owed to U.S. is unsecured and any distribution to U.S. will be made on a pro-rated basis with distributions to other creditors in the Case who have allowed, timely-filed, general unsecured claims. *See* 11 U.S.C. §§506(a) and 363(f)(5).

**C. UNSECURED PORTION OF DEBT RELATED TO SECOND TD**

Based on the Sales Price of $4,675,000.00, and the amounts of the liens senior to the Second TD, the Property Tax, the HOA Fees, the Broker Commissions, and the Other Closing Costs, the debt owed to Second TD Holder is only partially secured by the Second TD. The balance of such debt is an unsecured claim in the Case, subject to any claim objection. *See* 11 U.S.C. §§506(a) and 363(f)(5). There is insufficient value in the Real Property collateral to which the entire debt secured by the Second TD can attach.

**IV. ADMINISTRATIVE FEES AND EXPENSES TO PRESERVE AND DISPOSE OF COLLATERAL TO BE PAID FROM SALE ESCROW AND RETAINED FUNDS TO BE HELD AND PAID TO ESTATE FROM SECOND TD PAYMENT PER 11 U.S.C. §506(c)(c)**

Section 506(c) of the United States Bankruptcy Code provides:

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property."

Trustee incurred administrative expenses to insure, protect, maintain, and administer the Real Property that is the collateral of First TD Holder and Second TD Holder. These administrative fees and expenses incurred by Trustee include the cost of insurance premium, pool service, locksmith charges, gardening/hauling/clean-up

services, repair charges, HOA fees, utility payments and other costs advanced by Z&H, and other costs and fees of administration.

First TD Holder has not objected to Trustee's payment of the HOA Fees, Broker Commissions, and Other Closing Costs through the Sale Escrow.

Second TD Holder has not agreed to any reduction in the Second TD Payment for the Estate's additional administrative fees and expenses that are sought as a surcharge against the Second TD Payment pursuant to 11 U.S.C. §506(c). These payments and expenses include fees and expenses for Special Counsel (defined below), Estate Accountant (defined below), and additional administrative fees and costs to be advanced by Trustee and/or Z&H on behalf of Trustee.

Trustee incurred fees for special counsel, The Law Office of Brad S. Sures ("Special Counsel"), to assist Trustee with legal issues and procedures to obtain vacancy of the Real Property that was necessary to preserve and dispose of the Real Property. The current fees incurred by the Estate for these legal services total approximately $1,400.00.

Trustee is incurring fees for the Estate's accountant, SLBiggs, a division of SingerLewak ("Estate Accountant"), who is employed to review and analyze any tax consequences of the sale, prepare Estate tax returns, and provide other services required by the Estate that relate to preservation and disposition of the Real Property.

Trustee performed all other administrative and legal work in this Case required to preserve and dispose of the Real Property. Trustee did not engage a field agent as Estate Broker assisted Trustee with tasks related to preservation of the Real Property.

Nazaryan/sale motion                                    8.

Trustee requests a "hold-back" in the aggregate amount of at least $50,000.00 (the "Retained Funds") from the Second TD Payment to be disbursed to and retained by the Estate and to be applied to payment of additional administrative fees and expenses pursuant to 11 U.S.C. §506(c) as approved by the Court.

**V.   ADVERSARY AGAINST DEFENDANT ARTUR PER 11 U.S.C. §363(h)**

Debtor's interest in the Real Property is property of the Estate as stated by Debtor in his schedules filed with the Court. Debtor and Defendant Artur are joint tenants.  Trustee commenced an action against Defendant Artur, assigned adversary proceeding case no. 1:25-ap-01025-MB (the "Adversary), to sell the entire Real Property pursuant to 11 U.S.C. §363(h).  On May 22, 2025, the Clerk entered a notice of default in the Adversary.  On May 27, 2025, Trustee filed a motion for default judgment against Defendant Artur in the Adversary.  The objection period for such motion expired June 13, 2025.  On June 16, 2025, Trustee filed a declaration that no party requested a hearing on the motion for default judgment, lodged an order approving the motion for default judgment, and lodged the default judgment that provides for Trustee's sale of the Real Property, in its entirety.  The lodged order and judgment are pending entry by the Court.

**VI.   CLAIMS AND TAXES**

The claims bar dates in the Case are noticed for July 21, 2025 (the "Claims Bar Date") and October 14, 2025 for government claims (the "Government Claims Bar Date").  To date, creditors filed five (5) unsecured claims in the total amount of $50,431.47.

Trustee intends to set aside $40,000.00 (51%) of the Estate Payment for distribution to unsecured creditors.

Nazaryan/sale motion                              9.

Additionally, there are other assets in the Case that Trustee is administering, including a fraudulent conveyance action, assigned adversary proceeding case no. 1:25-ap-01030-MB (the "Second Adversary"), by which Trustee seeks to recover monetary damages for Debtor's transfer of certain real property on or about January 2, 2025 for less than reasonably equivalent value.

Trustee estimates that any funds recovered from the Second Adversary will be available for the payment of allowed administrative fees and expenses and for distribution to unsecured creditors. Trustee estimates that unsecured creditors will receive a meaningful distribution for their respective claims based on the facts and circumstances of this Case.

Trustee consulted with Estate Accountant and estimates that there will be no capital gains tax owed by the Estate as a result of the proposed sale.

## VII.   FINDING OF GOOD FAITH PURCHASER

Trustee requests that the Sale Order include a finding that Buyer or Highest Bidder, and any approved back-up buyer, is a "good faith purchaser" pursuant to Bankruptcy Code §363(m).

## VIII.   PROPOSED OVERBID PROCEDURE

Trustee proposes the following overbid procedure be used at the Hearing for the purpose of considering bids and seeks the Court's approval of the overbid procedure:

A.   Each potential bidder (other than Buyer) in order to qualify as a bidder at the Hearing, shall

(1) submit to Trustee, prior to the commencement of the Hearing, a cashier's check in the amount of at least One Hundred Forty-One Thousand and no/100 Dollars ($141,000.00) (the "Earnest

Money Deposit") made payable to "Mission Escrow." Trustee shall refund the Earnest Money Deposit if Trustee accepts the bid of another bidder;

(2) bid on the identical terms as, or better terms than, Buyer as set forth in the Agreement including, but not limited to, the "AS-IS, WHERE-IS" condition of the sale, with no contingencies;

(3) submit to Trustee prior to the commencement of the Hearing proof of ability to close escrow unconditionally on or before the first business day that is at least fifteen (15) days after entry of the Sale Order, and to tender the balance of any bid made by such bidder, such proof to be deemed acceptable or unacceptable by Trustee in her sole discretion, subject to approval by the Court; and

(4) attend the Hearing, in person or via ZoomGov video or audio, to participate in the overbidding; and

B. The initial overbid shall be a total of $4,700,000.00, i.e., $25,000.00 more than the Sales Price of $4,675,000.00, and all additional overbids must be made in minimum increments of $10,000.00 over the last stated overbid made on the record.

If Highest Bidder fails to close the Sale Escrow on or before the first business day that is at least fifteen (15) days after entry of the Sale Order, Highest Bidder shall forfeit the Earnest Money Deposit and the next highest bidder shall pay the next highest bid to purchase the Real Property within ten business days of written notification, transmitted via facsimile and/or e-mail, of Highest Bidder's default.

DATED: June 24, 2025                    /s/Nancy Hoffmeier Zamora
                                        Nancy Hoffmeier Zamora
                                        Chapter 7 Trustee

Nazaryan/sale motion                    11.

**MEMORANDUM OF POINTS AND AUTHORITIES**

This Memorandum of Points and Authorities is submitted in support of the Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens and Interests (Except L.A. County HERO Lien), Subject to Overbid, and Approving Surcharge for Administrative Fees and Expenses per 11 U.S.C. §506(c) (the "Motion") to which it is attached.  The capitalized terms have the meanings ascribed to them in the Motion unless otherwise defined herein.

## I.  FACTS

**A.   GENERAL BACKGROUND**

1.   On April 15, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case.  Trustee became the permanent Chapter 7 Trustee at the initial §341(a) meeting of creditors on May 14, 2025 (the "Meeting").

**B.   THE REAL PROPERTY**

2.   One of the primary assets of the Estate is the Real Property.  Debtor listed the Real Property in his Schedule A/B [dkt. 1].  Debtor and Defendant Artur are the only title holders of the Real Property.  Debtor's interest in the Real Property is property of the Estate pursuant to 11 U.S.C. §541(a).  Trustee commenced the Adversary against Defendant Artur and lodged an order approving the motion for default judgment and the default judgment that provides for Trustee's sale of the Real Property, in its entirety, per 11 U.S.C. §363(h).

3.   As of the Petition Date, Trustee immediately commenced her administration of the Real Property as an asset of the Estate.

Nazaryan/sale motion                    12.

Trustee investigated the value of the Real Property with the assistance of Estate Broker.  Trustee obtained and analyzed real property and other documents. Trustee acquired hazard and liability insurance for the Real Property effective as of April 18, 2025.

4.    On May 27, 2025, the Court entered that certain order (the "Special Counsel Employment Order") [dkt. no. 36] approving Trustee's employment of Special Counsel to assist Trustee with landlord-tenant issues. Special Counsel, on behalf of Trustee, commenced legal process to obtain possession of the Real Property as vacant. With the assistance of Special Counsel, Trustee complied with applicable legal process necessary to ensure that two invitees ("Invitees") vacated the Real Property and removed their personal property.  Trustee is informed that, to date, the Estate has incurred fees of approximately $1,400.00 owed to Special Counsel.

5.    Trustee communicated with the management company for HOA and its private security company that controls access to the guard-gated community where the Real Property is located.  Trustee controls access to the Real Property through established security controls and protocols.  Trustee, with the assistance of Estate Broker, changed the locks at the Real Property, arranged for clean-up of the interior of the Real Property, gardening services, and pool services.  Trustee, through Z&H, is advancing payment of utilities for the Real Property.

6.    Debtor did not reside in the Real Property on the Petition Date.  Trustee is informed that Debtor surrendered himself to federal custody in or about December 2024 to serve a five year prison sentence for conspiracy to commit bank fraud to which Debtor pled guilty in case no. 2:22-cr-00041-JAK in the Central District

Nazaryan/sale motion                    13.

of California.  Defendant Artur did not reside in the Real Property on the Petition Date.  Trustee is informed that Defendant Artur is serving a prison sentence for conspiracy to commit bank fraud to which he pled guilty and currently is incarcerated in the federal penitentiary in Atwater, California.

7.    According to the PTR, title to the Real Property is vested in:  "Artur Nazaryan, a single man and Hovhannes Nazaryan, a single man, as joint tenants, subject to proceedings pending in the U.S. Bankruptcy Court, Central District of California, entitled in re: Hovhannes Nazaryan, debtor, Case No. 1:25-bk-10617-MB, wherein a petition for relief was filed under Chapter 7 on April 14, 2025."  Pursuant to 11 U.S.C. §541(a), Debtor's interest in the Real Property is property of the Estate.  Pursuant to 11 U.S.C. §363(h) and the Adversary, Trustee can sell the Real Property in its entirety.

**C.  MARKETING, REAL ESTATE BROKERS, BROKER COMMISSIONS**

8.    On May 14, 2025, the Court entered that certain order (the "Broker Employment Order") [dkt. no. 28] approving Trustee's employment of Estate Broker to assist Trustee with marketing and sale of the Real Property.

9.    Estate Broker listed the Real Property for sale in the multiple listing service ("MLS") on May 11, 2025 and  marketed the Real Property through various well-known internet real estate sites such as Trulia, Redfin, Zillow, Homefinder.com, and Realtor.com (the "Internet Sites").  Estate Broker commenced marketing efforts after the confirmation that the Real Property was vacant. Estate Broker conducted  seven  private showings. Estate Broker informed Trustee regarding all marketing activity related to the Real Property.

Nazaryan/sale motion                    14.

10.   Estate Broker received and presented two (2) written offers to Trustee.  Trustee, with the assistance of Estate Broker, made multiple counter-offers.  Trustee, through Estate Broker, negotiated an agreement and opened an initial sale escrow with a buyer who was relying on a loan to purchase the Real Property for $4,800,000.00.   This buyer could not obtain a loan by the contingency deadline and cancelled the initial sale escrow.

11.   Subsequently, Trustee, with the assistance of Estate Broker, negotiated the Agreement and opened the Sale Escrow with Buyer for an all cash sales price of $4,700,000.00.  After Buyer completed multiple property inspections, Buyer requested a price reduction based on certain conditions of the Real Property and estimated costs of repair.  After further negotiations, the Sales Price is now $4,675,000.00.

12.   The Employment Order provides for the Broker Commissions to be calculated based on two percent (2%) of the gross sales price for the Real Property to compensate Estate Broker and for Trustee to pay up to two percent (2%) of the gross sales price for the Real Property to compensate Buyer Broker as a negotiated term of the Agreement.  At Trustee's request, Estate Broker and Buyer Broker consented to a reduction of their respective commissions to one and one-half percent (1.5%) of the Sales Price, each.  If the overbid procedure results in a higher price for sale of the Real Property, the Broker Commissions will have to be adjusted based on the higher price but the same reduced percentages will apply.

**D.   TERMS OF PROPOSED SALE OF REAL PROPERTY**

13.   Trustee desires to maximize distributions to creditors of the Estate by selling the Real Property free and clear of liens and

interests, except for the HERO Lien that Buyer is assuming per its terms, on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $4,675,000.00 and pursuant to the other terms set forth in the Agreement, or to the Highest Bidder at the Hearing if Buyer is not the Highest Bidder.

14.  The Sales Price offered by Buyer is the highest and best offer that Trustee received as of the date of the Motion that has not been withdrawn.  Trustee believes the Sales Price represents the fair market value for the Real Property, including personal property at the Real Property, considering current real property and insurance market conditions, the condition of the Real Property, and the marketing efforts of Estate Broker, including listing of the Real Property on the MLS and the Internet Sites.

15.  Trustee has no relationship to or with Buyer and is not related to Buyer in any manner.  Trustee reviewed Debtor's schedules and the claims register and claims filed in the Case. Based on this review, Trustee determined that Buyer is not a creditor of the Estate.  Trustee believes that Buyer is a good faith purchaser. Trustee and Buyer negotiated at "arm's-length."

16.  Estate Broker provided Trustee with information necessary to satisfy Trustee that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

17.  Mission prepared the Estimated Closing Statement to assist Trustee with analysis of the amounts to be paid through the Sale Escrow from the Sales Price.

18.  As described in the Motion and in the exhibits attached to the Trustee Declaration, the Sales Price ($4,675,000.00) will provide payment as follows:

Nazaryan/sale motion                16.

a.    the Total LAPFCU Payoff secured by the LAPFCU Lien to be divided between (1) LAPFCU for the LAPFCU Payment of $50,000.00 and (2) the Estate for the Estate Payment of $78,382.31 pursuant to the LAPFCU Stipulation and the LAPFCU Order;

b.    the First TD Payoff secured by the First TD to be paid to First TD Holder, estimated to total approximately $3,085,186.35 as of July 31, 2025;

c.    the Second TD Payment, that is, the secured portion of the debt related to the Second TD to be paid to Second TD Holder subject to and limited by (1) the Second TD Payoff, (2) the reduction for administrative fees and expenses to be paid to the Estate per 11 U.S.C. §506(c) as approved by the Court, and (3) the sale proceeds available after paying the LAPFCU Payment, the Estate Payment, the First TD Payoff, the Property Tax, the HOA Fees, the Broker Commissions, and the Other Closing Costs;

d.    the Property Tax;

e.    the HOA Fees;

f.    the Broker Commissions; and

g.    the Other Closing Costs.

18.    Trustee reserves all rights to object to the validity, scope, and priority of all disputed liens, claims and/or interests, if necessary, which will attach to the funds received by the Estate from the sale in the same priority, validity, and scope as such liens currently exist against the Real Property but the Real Property will be sold free and clear of all liens, claims and/or interests, except for the HERO Lien that Buyer is assuming per its terms.  No liens or exemption may attach to the Estate Payment.

19.    There  is  no  remaining  value  in  the  Real  Property

Nazaryan/sale motion                    17.

collateral to which the U.S. Restitution Liens can attach and, consequently, the debt secured by the U.S. Restitutions Liens is unsecured. Based on the value of of the Real Property collateral, the debt secured by the Second TD is limited and part of Second TD Holder's debt is unsecured.

20. The Motion seeks approval and authorization for Trustee to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer, or Highest Bidder at the Hearing on the Motion if it is not Buyer, and to pay the LAPFCU Payment, the Estate Payment, the First TD Payment, the Property Tax, the HOA Fees, the Broker Commissions, the Other Closing Costs, and the Second TD Payment.

21. By the Motion, Trustee seeks the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $4,675,000.00, and pursuant to the other terms and conditions set forth in the Agreement, or to the Highest Bidder for the highest bid as determined at the Hearing. The Agreement includes all personal property at the Real Property. Debtor listed personal property in his schedules with a value of $1,000.00 and claimed an exemption in such personal property of $1,000.00. Trustee relied on these schedules and intends to pay Debtor the claimed exemption of $1,000.00 at the conclusion of the Case unless such exemption is disallowed by the Court after considering an objection to such exemption.

**E.   REQUEST FOR SURCHARGE PER 11 U.S.C. §506(c)**

22. Trustee incurred administrative expenses to insure, protect, maintain, and administer the Real Property that is the

Nazaryan/sale motion                    18.

collateral of First TD Holder and Second TD Holder.  These administrative fees and expenses incurred by Trustee include the cost of insurance premium, pool service, repair charges, locksmith charges, gardening/hauling/clean-up services, HOA fees, utility payments and other costs advanced by Z&H, and other costs and fees of administration.

23.  Second TD Holder has not agreed to any reduction in the Second TD Payment for the Estate's additional administrative fees and expenses that are sought as a surcharge against the Second TD Payment pursuant to 11 U.S.C. §506(c).  These payments and expenses include fees and expenses for Special Counsel, Estate Accountant, and additional administrative fees and costs to be advanced by Trustee and/or Z&H on behalf of Trustee.

24.  Trustee has incurred fees for Special Counsel to assist Trustee with legal issues and procedures to obtain vacancy of the Real Property that was necessary to preserve and dispose of the Real Property.  The current fees incurred by the Estate for these legal services total approximately $1,400.00.

25.  Trustee anticipates incurring fees for Estate Accountant who has been engaged to review and analyze any tax consequences of the sale, prepare Estate tax returns, and provide other services required by the Estate that relate to preservation and disposition of the Real Property.

26.  To date, Trustee has performed all other administrative and legal work in this Case that has been required to preserve and dispose of the Real Property.  Trustee did not have to engage a field agent as Estate Broker assisted Trustee with numerous tasks related to preservation of the Real Property.

27. Trustee requests the Retained Funds of $50,000.00 from the Second TD Payment to be disbursed to and retained by the Estate and to be applied to payment of additional administrative fees and expenses pursuant to 11 U.S.C. §506(c) as approved by the Court.

**F. CLAIMS AND TAXES**

28. The Claims Bar Date in the Case is July 21, 2025 and October 14, 2025 for the Government Claims Bar Date. To date, creditors filed five (5) unsecured claims in the total amount of $50,431.47.

29. Trustee intends to set aside $40,000.00 (51%) of the Estate Payment for distribution to unsecured creditors.

30. There are other assets in the Case that Trustee is administering. Trustee estimates that any funds recovered from the Second Adversary will be available for the payment of allowed administrative fees and expenses and for distribution to unsecured creditors. Trustee estimates that unsecured creditors will receive a meaningful distribution for their respective claims based on the facts and circumstances of this Case.

31. Trustee consulted with Estate Accountant and estimates that there will be no capital gains tax owed by the Estate as a result of the proposed sale.

## II. ARGUMENT

**A. DEBTOR'S INTEREST IN THE REAL PROPERTY IS PROPERTY OF THE ESTATE AND TRUSTEE HAS AUTHORITY TO SELL THE PROPERTY IN ITS ENTIRETY PURSUSANT TO 11 U.S.C §363(h)**

11 U.S.C. §541(a) provides that property of a debtor's bankruptcy estate includes:

> "(1) . . . [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.

. . .

(7)  Any interest in property that the estate acquires after the commencement of the case."

In the instant case, as of the Petition Date, record title to the Real Property was held in the names of Debtor and Defendant Artur, as joint tenants.  Debtor's interest in the Real Property is property of the Estate.  Trustee can sell the entirety of the Real Property pursuant to 11 U.S.C. §363(h) based on the Adversary and the default judgment that is pending entry by the Court. Additionally, the Estate has acquired the Estate Payment as an interest in the Real Property pursuant to the LAPFCU Stipulation and the LAPFCU Order.

**B.    TRUSTEE'S STATUTORY DUTIES AND SALE OF REAL PROPERTY**

Section 704(a)(1) of the Bankruptcy Code provides that the trustee shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as possible as is compatible with the best interests of parties in interest".  The Trustee Handbook specifically states in Chapter 4. "Duties of a Trustee in the Administration of a Case", A. Introduction, that "[t]he principal duty of the trustee is to collect and liquidate the property of the estate and to distribute the proceeds to creditors."

The proposed sale of the Real Property pursuant to the Agreement and subject to overbid and approval of the Court, as contemplated by the Motion, is in the best interests of the Estate and should be approved.  11 U.S.C. §363(b) authorizes Trustee to sell estate property following notice and a hearing on terms that are fair and reasonable and involve arm's-length transactions

between Trustee and bidders.

Specifically, 11 U.S.C. §363(b)(1) states in pertinent part that:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

In determining whether the sale of assets outside of the ordinary course of business should be approved, bankruptcy courts usually consider several factors, including:  (1) whether a sufficient business reason exists for the sale; and (2) whether the proposed sale is in the best interest of the estate, which in turn consists of the following factors:  (a) that terms of the sale are fair and reasonable; (b) that the proposed sale has been adequately marketed; (c) that the proposed sale terms have been properly negotiated and proposed in good faith; and (d) that the purchaser is involved in an arms-length transaction with the seller. *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D.Cal. 1991) ("In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, and that it is an 'arms-length' transaction."); *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335-356 (Bankr. D.Del. 1987) (In determining whether a proposed sale of equipment is proper under §363, courts should consider whether the proposed sale is fair and equitable, whether there was a good business reason for completing the sale, and whether the transaction is proposed in good faith.); *In re Alves*, 52 B.R. 353, 355 (Bankr. D.R.I. 1985) (whether

Nazaryan/sale motion    22.

to approve a sale under §363 depends upon the integrity of sale and the best interest of bankruptcy estate).

In the instant case, Trustee has satisfied all of the applicable elements discussed above concerning the proposed sale of the Real Property, and Trustee has sound reasons for the sale, specifically, to maximize return to the Estate by liquidation of the Real Property and to minimize additional administrative fees and expenses for the Estate.

Trustee submits that the Sales Price for the Real Property is the result of competitive marketing and arm's-length negotiations including multiple counter-offers. Further, the final price for the Real Property will be maximized by the overbid procedure at the Hearing that will allow for competitive bidding.

**C.   THE COURT HAS AUTHORITY TO APPROVE THE SALE OF THE REAL PROPERTY FREE AND CLEAR OF ANY INTERESTS AND LIENS PURSUANT TO 11 U.S.C. §§363(b) AND (f)**

Trustee seeks this Court's authority to sell the Real Property free and clear of interests and liens, except the HERO Lien that Buyer is assuming per its terms, pursuant to 11 U.S.C. §§363(b) and (f) of the Bankruptcy Code.  11 U.S.C. §363(b) provides that:

> [t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

**1.   Interests in Real Property**

As described above, Debtor's interest in the Real Property became property of the Estate on the Petition Date.  Based on the Adversary and 11 U.S.C. §363(h), Trustee can sell the entirety of the Real Property.  Debtor neither claimed nor is entitled to any homestead exemption in the Real Property and he did not reside at

the Real Property on the Petition Date.  Debtor cannot claim an exemption in the Estate Payment.  Debtor's claimed exemption does not attach to the "carve-outs" that Trustee negotiates for the benefit of the Estate.  *See In re Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D. Cal. 2013) and in *In re Brown*, 2015 Bankr. LEXIS 1026* (Bankr. E.D. Mich. 2015).

The court in *In re Bunn-Rodemann* sustained the chapter 7 trustee's objection to debtor's claim of exemption in real property. The court's decision explains, at length, the short sale process by the bankruptcy trustee and various considerations.  In sum, the court concludes that the debtor "cannot exempt (or appropriate) the sales proceeds encumbered by the creditor's lien . . . ."  491 B.R. at 137.  *See, also, In re Baldridge*, 553 Fed.Appx. 598 (6th Cir. 2014)*; In re Diener*, 2015 Bankr. LEXIS 2235* (Bankr. N.D. Ga. 2015) (holding where a chapter 7 trustee and a junior lienholder's carve-out agreement provided that each would receive some of the proceeds from the section 363 sale after payment of the first priority lien, debtor's state law exemption did not apply to the funds received by the estate under the carve-out agreement and the trustee's carve-out represented the value added from trustee's efforts and powers); and *In re Stark*, 2020 Bankr. LEXIS 2520 (Bankr. E.D. N.Y. 2020) (holding chapter 7 trustee has the authority to negotiate a "give-up" with a mortgagee for the benefit of the estate; the funds are attributable to the rights and powers of the trustee granted under the Bankruptcy Code and exercised for the benefit of the estate; thus, debtor cannot lay claim to those funds on account of debtor's exemption).

. . . . .

Nazaryan/sale motion                    24.

**2.   Liens Recorded Against Real Property**

No other parties hold any interest in the Real Property except for the lienholders discussed below.

11 U.S.C. §363(f) provides that:

> [t]he trustee may sell property. . . free and clear of any interest in such property of an entity other than the estate, only if -. . .
>
> (1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;. . .
>
> (2)   such entity consents;. . .
>
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)   such interest is in bona fide dispute; or
>
> (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code §363(f) are written in the disjunctive, authority to sell the Real Property free and clear of any and all interests and liens should be granted if, with respect to each lien holder, any of the conditions are met.

a.   LAPFCU consents to the proposed sale as stated in the LAPFCU Stipulation and approved by the LAPFCU Order, thus satisfying §363(f)(2).

b.   The First TD is being paid in full by the First TD Payoff and, consequently, Trustee is informed that First TD Holder consents to the proposed sale, thus satisfying §363(f)(2).

c.   The Property Tax is being paid in full.

d.   Buyer is assuming the HERO Lien and the Real Property is not being sold free and clear of the HERO Lien.  By its terms, the

HERO Lien permits Buyer to assume the HERO Lien and its obligations that provide for payments to continue to be made through the real property tax bill for the Real Property.

e.    The U.S. Restitution Liens are completely undersecured pursuant to 11 U.S.C. §506(a) and Trustee is informed that the U.S. consents to the proposed sale, thus satisfying §363(f)(2).

f.    The Second TD Holder's debt is partially secured and partially unsecured pursuant to 11 U.S.C. §506(a) and Second TD Holder can be compelled to accept the Second TD Payment pursuant to 11 U.S.C. §363(f)(5) as discussed below.

11 U.S.C. §506(a)(1) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Consequently, the secured portion of the debt Second TD Holder is claiming is limited to the value of the Real Property remaining after deducting all senior debt secured by the Real Property and after deducting "the reasonable, necessary costs and expenses of preserving, or disposing of" the Real Property, including, without limitation, the Property Tax, the HOA Fees, the Broker Commissions, the Other Closing Costs, and administrative fees and expenses of the Estate including, without limitation, for Special Counsel and Estate Accountant.

Pursuant to 11 U.S.C. §363(f)(5), Second TD Holder, in a hypothetical judicial or non-judicial foreclosure sale under

California state law, or pursuant to a tax lien sale under applicable state or federal law, could be compelled to accept a money satisfaction for the Second TD.  These types of sales satisfy the requirement for a legal or equitable proceeding as set forth in 11 U.S.C. §363(f)(5).

Case law supports this application of 11 U.S.C. §363(f)(5) to the instant case.   *See In re Jolan*, 403 B.R. 866 (Bankr. W.D. Wash. 2009).  The Court in *Jolan*, over the objection of secured parties, concluded that *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (BAP 9th Cir.  2008) "does not preclude a §363(b) sale free and clear for an amount less than enough to satisfy all liens" and authorized an auction sale of personal property by the chapter 7 trustee.  403 B.R. at 866-67.

The Court in *Jolan* thoroughly discusses and distinguishes the 9th Circuit BAP's decision in *In re PW, LLC* and points out that the panel only considered a few hypotheticals in which a lienholder could be compelled to accept a money satisfaction of its interest before holding that the availability of cramdown under §1129 does not satisfy §363(f)(5).  403 B.R. 868-69.

"The Panel nowhere addresses non-contractual mechanisms whereby a lienholder might get less than full payment yet lose the lien. In fairness, the appellees defending the sale free and clear did not even argue that there were any qualifying legal or equitable proceedings beyond cramdown under §1129.  Appellees' briefs to the Panel cite no state statutes, nor any federal statutes but the Bankruptcy Code, nor any cases considering non-bankruptcy legal or equitable procedures which might serve."  *Id*. at 869.

The Court in *Jolan* describes other examples, such as foreclosure sales involving real property.

Another persuasive case, *In re Boston Generating, LLC*, 440 B.R. 302 (Bankr. S.D.N.Y. 2010), declined to follow *In re PW, LLC*

and cited *Jolan* for the proposition that "the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5)." 440 B.R. at 333.

The bankruptcy court in *Boston Generating* went on to explain that numerous legal and equitable procedures exist by which junior lienholders could be forced to accept less than full payment of their debt and held that because they could be compelled under state law to accept general unsecured claims to the extent the sale proceeds are not sufficient to pay their claims in full, section 363(f)(5) was satisfied. *Id.*

*See, also, In re Hassen Imps. P'ship* 502 B.R. 851 (Dist. C.D. Cal. 2013) (sale order reversed because interest was a restrictive use covenant or equitable servitude that could not be satisfied by a monetary payment, in contrast to a lien that could be foreclosed and would be compelled to accept a money satisfaction in the form of any remaining sale proceeds from a foreclosure sale).  The District Court in the *Hassen* case extensively discussed *In re PW, LLC*, *In re Jolan*, and *In re Boston Generating, LLC* and described distinctions between junior liens or interests that could be compelled to accept a money satisfaction and those that could not, like an equitable servitude or covenant related to real property.

In the instant case, Second TD Holder could be compelled to accept a money satisfaction, less than the full amount of the Second TD Payoff, under a legal or equitable proceeding such as a judicial or non-judicial foreclosure sale or tax lien sale. Consequently, 11 U.S.C. §363(f)(5) applies in the instant case and this Court should approve Trustee's sale of the Real Property. . . . . .

**D.    SALE OF THE REAL PROPERTY FREE AND CLEAR OF LIENS IS IN THE BEST INTEREST OF CREDITORS OF THE ESTATE**

Sale of the Real Property pursuant to the terms of the Agreement is in the best interest of creditors with claims against the Estate for the following reasons:

1.    The Real Property is one of the assets of the Estate. Sale of the Real Property will minimize administrative expenses to the Estate by resolving the Estate's administration in a speedy and cost-efficient manner for the benefit of secured lienholders and other creditors of the Estate.

2.    Sale of the Real Property will eliminate the risk and uncertainty of future fluctuations in the real estate market.

3.    Sale of the Real Property pursuant to the terms of the Agreement is in the best interest of the unsecured creditors of the Estate as Trustee estimates that a meaningful distribution will be paid from the Estate Payment.

**E.    NOTICE OF THE SALE IS ADEQUATE**

Trustee is serving notice of the sale on Debtor, Defendant Artur, the Office of the United States Trustee, all creditors, and all other interested parties.  Trustee is providing notice of the sale with the overbid procedure to be posted by the Clerk's Office on the Court's website.  The proposed sale is subject to overbid. The ability of other potentially interested bidders to provide competing offers for the Real Property ensures that the proposed sale does not result in a lucrative "windfall" to Buyer at the expense of creditors of the Estate.  *See In re Onouli-Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988).

. . . . .

**F.    BUYER, OR HIGHEST BIDDER, SHOULD BE DEEMED A "GOOD FAITH PURCHASER" PURSUANT TO 11 U.S.C. § 363(m)**

11 U.S.C. § 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (*citing In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id. (quoting Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

In the instant case, Buyer is buying in good faith, and has not colluded with Trustee, other potential buyers or any other party regarding the subject sale.  The anticipated sale of the Real Property has been negotiated with Buyer in "arm's-length" discussions.  Moreover, Trustee is informed and believes that Estate Broker has actively marketed the Real Property through commercially reasonable means of selling residential real property including the MLS listing and the Internet Sites.  Estate Broker conducted seven (7) private showings of the Real Property.  Estate Broker received and presented two (2) written offers to Trustee and Trustee provided multiple counter-offers.  The Agreement is the highest and best offer Trustee has received as of the date of the

Motion that has not been withdrawn.  At the Hearing, there will be an opportunity for overbids to ensure that the Real Property is sold for the highest price possible.  Based on such facts and circumstances, Trustee believes that this Court can properly determine that Buyer is a "good faith purchaser" pursuant to 11 U.S.C. §363(m).

If Buyer is not the Highest Bidder at the Hearing, Trustee will request an opportunity at the Hearing for the Court to make a finding that the Highest Bidder is a "good faith purchaser" pursuant to 11 U.S.C. §363(m).

**G.    THE BANKRUPTCY COURT HAS THE AUTHORITY TO IMPLEMENT THE PROPOSED OVERBID PROCEDURE**

Implementation of the bidding procedure is an action outside of the ordinary course of business.  11 U.S.C. §363(b)(1) provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  Furthermore, under 11 U.S.C. §105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Thus, pursuant to §§363(b)(1) and 105(a), this Court may authorize the implementation of the overbidding procedure.

The bankruptcy court may issue orders determining the terms and conditions for overbids with respect to a sale of estate assets, including specifying the minimum consideration required for an overbid, the particular contractual terms required to be offered by overbidders, and requiring and setting the amount of potential overbidders' deposits.  *In re Crown Corporation* 679 F.2d 774 (9th Cir. 1982).  The overbid procedures proposed in the Motion will

ensure that the Real Property will generate the greatest possible value to the Estate.  The procedures also place appropriate checks on overbidders to ensure that only qualified bids are considered.

**H.    THE BROKER COMMISSIONS SHOULD BE APPROVED**

Real estate brokers are "professionals" for purposes of §327 of the Bankruptcy Code and, as such, their employment must be approved by the court.  *In re Cummins*, 15 B.R. 893, 895 (BAP 9th Cir. 1981).  The Court entered the Employment Order approving the Broker Commissions of two percent (2%) of the Sales Price for Estate Broker and up to two percent (2%) of the Sales Price for Buyer Broker, subject to negotiation and approval of the Court. Estate Broker and Buyer Broker, at Trustee's request, consented to a reduction of their respective commissions to one and one-half percent (1.5%) of the Sales Price.  Trustee seeks the Court's approval of the Broker Commissions in the total amount of $140,250.00, based on three percent (3%) of the Sales Price, to be divided one and one-half percent (1.5%) each to Estate Broker and to Buyer Broker.  Alternatively, Trustee seeks the Court's approval of the Broker Commissions equal to three percent (3%) of the Highest Bid, to be divided one and one-half percent (1.5%) each to Estate Broker and to broker for Highest Bidder.

As previously discussed, the sale is fair and reasonable and in the best interest of the Estate.  The payment of the Broker Commissions as set forth in the Agreement and described in the Motion should be approved by the Court.

## III.  CONCLUSION

**WHEREFORE,** Trustee requests that the Court enter an order providing that:

A.    The Motion, including the proposed overbid procedure, is approved in its entirety;

B.    Trustee has the authority to sell the Real Property, in its entirety, pursuant to 11 U.S.C. §§541(a), 363(b), (f) and (h) and 704(a)(1);

C.    Trustee is authorized to execute any and all documents, including, but not limited to, the Agreement, or such other agreement made as an offer by Highest Bidder, escrow instructions, and a quit claim deed on behalf of the Estate and Defendant Artur, necessary to sell and transfer the Real Property to Buyer or to the Highest Bidder at the Hearing if Buyer is not the Highest Bidder, free and clear of all liens and interests (except for the HERO Lien that Buyer is assuming), for the Sales Price or, if there is overbidding at the Hearing, for the amount of the Highest Bid, and pursuant to the terms and conditions set forth in the Agreement or such other agreement made as an offer by the Highest Bidder and, if the Highest Bidder defaults, to the next highest bidder for the next highest bid;

D.    If the Highest Bidder fails to close escrow on or before the first business day that is at least fifteen (15) days after entry of the Sale Order, the Highest Bidder shall forfeit the Earnest Money Deposit and the next highest bidder shall pay the next highest bid to purchase the Real Property within ten business days of written notification, transmitted via facsimile and/or e-mail, of Highest Bidder's default;

E.    Trustee is authorized to pay (1) the LAPFCU Payment, (2) the Estate Payment, (3) the First TD Payoff, (4) the Second TD Payment less the Retained Funds as approved by the Court, (5) the

Nazaryan/sale motion                              33.

Property Tax, (6) the HOA Fees, (7) the Broker Commissions, and (8) the Other Closing Costs;

F.    The Estate Payment is to be issued by Mission to Trustee for deposit in the Estate bank account;

G.    Buyer, or Highest Bidder if other than Buyer, is entitled to the protections of §363(m) of the Bankruptcy Code;

H.    Notice of the Motion and of the sale is proper and adequate;

I.    There shall be no liability to Trustee or her professionals, in any capacity, by virtue of the consummation of the sale or by virtue of the failure of such sale to consummate;

J.    The stay of the order approving this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules is waived; and

K.    Such other and further relief as the Court may deem just and appropriate.

DATED: June 24, 2025

/s/ Nancy Hoffmeier Zamora
Nancy Hoffmeier Zamora
Chapter 7 Trustee

Nazaryan/sale motion                    34.

## **<u>DECLARATION OF BEHNAZ TAVAKOLI</u>**

I, Behnaz Tavakoli, declare that:

1.   I am a duly licensed real estate professional employed by The ONE Luxury Properties, the broker ("Estate Broker") employed by Chapter 7 Trustee Nancy Hoffmeier Zamora ("Trustee") in the above-entitled case (the "Case") of debtor Hovhannes Nazaryan ("Debtor"). I am over the age of 18 years.

2.   I have personal knowledge of the facts stated herein and if called as a witness, I could and would competently testify hereto.

3.   The capitalized terms used herein have the meanings ascribed to them in the Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens (Except L.A. County HERO Lien), Subject to Overbid, and Approving Surcharge for Administrative Fees and Expenses Per 11 U.S.C. §506(c) (the "Motion") and the Memorandum of Points and Authorities to which this declaration is attached unless otherwise defined herein.

4.   Pursuant to the Employment Order, Estate Broker was employed by Trustee to market and sell the Real Property effective as of May 14, 2025.  I am the agent of Estate Broker primarily responsible for marketing and selling the Real Property.

5.   Estate Broker listed and actively marketed the Real Property for sale.  The Real Property was listed in the MLS on May 11, 2025 and Estate Broker also marketed the Real Property through the Internet Sites.  Estate Broker commenced marketing efforts after the confirmation that the Real Property was vacant. Estate Broker conducted  seven appointments to show the Real Property. Estate Broker informed Trustee regarding all marketing activity.

Nazaryan/sale motion                                  35.

6.    Estate Broker received and presented two (2) written offers to Trustee.  Trustee, with the assistance of Estate Broker, made multiple counter-offers.  Trustee, through Estate Broker, negotiated an agreement and opened an initial sale escrow with a buyer who was relying on a loan to purchase the Real Property for $4,800,000.00.  This buyer could not obtain a loan by the contingency deadline and cancelled the initial sale escrow.

7.    Subsequently, Trustee, with the assistance of Estate Broker, negotiated the Agreement and opened the Sale Escrow with Buyer for an all cash sales price of $4,700,000.00.  After Buyer completed multiple property inspections, Buyer requested a price reduction based on certain conditions of the Real Property and estimated costs of repair.  After further negotiations, the Sales Price is now $4,675,000.00.

8.    The Employment Order provides for the Broker Commissions to be calculated based on two percent (2%) of the gross sales price for the Real Property to compensate Estate Broker and for Trustee to pay up to two percent (2%) of the gross sales price for the Real Property to compensate Buyer Broker as a negotiated term of the Agreement.  Estate Broker and Buyer Broker consented to a reduction of their respective commissions to one and one-half percent (1.5%) of the Sales Price, each.  If the overbid procedure results in a higher price for sale of the Real Property, the Broker Commissions will have to be adjusted based on the higher price but the same reduced percentages will apply.

9.    Subsequent to execution of the Agreement, Estate Broker continues to market the Real Property in an effort to procure potential overbidders.

Nazaryan/sale motion                                    36.

10. The Real Property continues to be listed on the MLS. I amended the listing for the Real Property to include information concerning the Hearing and bidding procedures. I will provide copies of the pleadings and proposed overbid procedures as requested by any potential overbidders.

11. Based on my experience as a real estate agent, I believe that the Sales Price of $4,675,000.00 reflects the fair market value of the Real Property based on its current condition, results of home inspections, and the current real estate and home insurance markets.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of June, 2025, at Westlake Village, California.

_____
Behnaz Tavakoli

### DECLARATION OF AVI MALATIAHO

I, Avi Malatiaho, declare that:

1.     I am over the age of 18 years.  I have personal knowledge of the facts stated herein and if called as a witness, I could and would competently testify hereto.

2.     The capitalized terms used herein have the meanings ascribed to them in the Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens (Except L.A. County HERO Lien), Subject to Overbid, and Approving Surcharge for Administrative Fees and Expenses Per 11 U.S.C. §506(c) (the "Motion") and the Memorandum of Points and Authorities to which this declaration is attached unless otherwise defined.

3.     My spouse, Minoo Kahen, and I are the persons defined as Buyer in the Motion.  We have no prior or current connections, and do not expect to have any future connections, with any relevant persons in the Case including, without limitation: Debtor, Defendant Artur, Trustee, any of Trustee's employees and professionals, potential overbidders and their respective agents, and any creditors in the Case.

4.     My spouse and I have not transferred, and do not contemplate that either of us will transfer, any consideration to any person or entity related to the purchase of the Real Property except for the Sales Price of $4,675,000.00 or any higher bid approved by the Court that we, as Buyer, pay to Trustee on behalf of the Estate in the Case, through the Sale Escrow.

5.     Buyer has not committed any fraud nor has Buyer colluded with Debtor, Defendant Artur, Trustee, Trustee's employees and professionals, creditors in the Case, or potential overbidders or

their agents.    I have not attempted to take unfair advantage of other potential buyers of the Real Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of June, 2025, at Calabasas, California.

Avi Malatiaho

39.

### DECLARATION OF NANCY HOFFMEIER ZAMORA

I, Nancy Hoffmeier Zamora, declare:

1.    I am the duly appointed, qualified and acting Chapter 7 Bankruptcy Trustee of the above-entitled case.  If called upon as a witness I could and would competently testify to the matters stated herein.  I am over the age of 18 years.

2.    All capitalized terms used in this declaration have the meanings ascribed to them in the foregoing Motion to Sell Real Property Free and Clear of Liens (Except L.A County HERO Lien), Subject to Overbid, and Approving Surcharge for  Administrative Fees and Expenses Per 11 U.S.C. §506(c) (the "Motion") and the Memorandum of Points and Authorities in support of the Motion unless otherwise defined herein.

3.    I reviewed the Court's docket and claims register for the Case.  I reviewed the pleadings and claims filed in the Case.  I reviewed real property documents recorded in the Official Records and documents provided to me by Debtor's counsel, creditors, and their respective counsel.

4.    On the Petition Date, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case.  I became the permanent Chapter 7 Trustee at the Meeting.

5.    One of the primary assets of the Estate is the Real Property. Debtor listed the Real Property in his Schedule A/B [dkt. 1].  Debtor and Defendant Artur are the only title holders of the Real Property.  Debtor's interest in the Real Property is property of the Estate pursuant to 11 U.S.C. §541(a).  I commenced the Adversary against Defendant Artur and lodged an order approving the

motion for default judgment and the default judgment that provides for my sale of the Real Property, in its entirety, per 11 U.S.C. §363(h).

6. As of the Petition Date, I immediately commenced my administration of the Real Property as an asset of the Estate. I investigated the value of the Real Property with the assistance of Estate Broker. I obtained and analyzed real property and other documents. I acquired hazard and liability insurance for the Real Property effective as of April 18, 2025.

7. On May 27, 2025, the Court entered the Special Counsel Employment Order [dkt. no. 36] approving my employment of Special Counsel to assist me with landlord-tenant issues. Special Counsel, on my behalf, commenced legal process to obtain possession of the Real Property as vacant. With the assistance of Special Counsel, I complied with applicable legal process necessary to ensure that Invitees vacated the Real Property and removed their personal property. I am informed that, to date, the Estate has incurred fees of approximately $1,400.00 owed to Special Counsel.

8. I communicated with the management company for HOA and its private security company that controls access to the guard-gated community where the Real Property is located. I control access to the Real Property through established security controls and protocols. With the assistance of Estate Broker, I changed the locks at the Real Property, arranged for clean-up of the interior of the Real Property, gardening services, and pool services. Through Z&H, I am advancing payment of utilities for the Real Property and certain other costs.

9. I am informed that Debtor did not reside in the Real

Nazaryan/sale motion                                      41.

Property on the Petition Date and that Debtor surrendered himself to federal custody in or about December 2024 to serve a five year prison sentence for conspiracy to commit bank fraud to which Debtor pled guilty in case no. 2:22-cr-00041-JAK in the Central District of California. I am informed that Defendant Artur did not reside in the Real Property on the Petition Date and that Defendant Artur is serving a prison sentence for conspiracy to commit bank fraud to which he pled guilty and currently is incarcerated in the federal penitentiary in Atwater, California.

10. According to the PTR, title to the Real Property is vested in: "Artur Nazaryan, a single man and Hovhannes Nazaryan, a single man, as joint tenants, subject to proceedings pending in the U.S. Bankruptcy Court, Central District of California, entitled in re: Hovhannes Nazaryan, debtor, Case No. 1:25-bk-10617-MB, wherein a petition for relief was filed under Chapter 7 on April 14, 2025." Pursuant to 11 U.S.C. §541(a), Debtor's interest in the Real Property is property of the Estate. Pursuant to 11 U.S.C. §363(h) and the Adversary, I can sell the Real Property in its entirety.

11. On May 14, 2025, the Court entered the Broker Employment Order [dkt. no. 28] approving my employment of Estate Broker to assist me with marketing and sale of the Real Property.

12. Estate Broker listed the Real Property for sale in the MLS on May 11, 2025 and marketed the Real Property through the Internet Sites. Estate Broker commenced marketing efforts after the confirmation that the Real Property was vacant. Estate Broker conducted seven private showings. Estate Broker informed me regarding all marketing activity related to the Real Property.

13. Estate Broker received and presented two (2) written

offers to me. With the assistance of Estate Broker, I made multiple counter-offers. Through Estate Broker, I negotiated an agreement and opened an initial sale escrow with a buyer who was relying on a loan to purchase the Real Property for $4,800,000.00. This buyer could not obtain a loan by the contingency deadline and cancelled the initial sale escrow.

14. Subsequently, with the assistance of Estate Broker, I negotiated the Agreement and opened the Sale Escrow with Buyer for an all cash sales price of $4,700,000.00. After Buyer completed multiple property inspections, Buyer requested a price reduction based on certain conditions of the Real Property and estimated costs of repair. After further negotiations, the Sales Price is now $4,675,000.00.

15. The Employment Order provides for the Broker Commissions to be calculated based on two percent (2%) of the gross sales price for the Real Property to compensate Estate Broker and for me to pay up to two percent (2%) of the gross sales price for the Real Property to compensate Buyer Broker as a negotiated term of the Agreement. At my request, Estate Broker and Buyer Broker consented to a reduction of their respective commissions to one and one-half percent (1.5%) of the Sales Price, each. If the overbid procedure results in a higher price for sale of the Real Property, the Broker Commissions will have to be adjusted based on the higher price but the same reduced percentages will apply.

16. I desire to maximize distributions to creditors of the Estate by selling the Real Property free and clear of liens and interests, except for the HERO Lien that Buyer is assuming per its terms, on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price

Nazaryan/sale motion                                    43.

of $4,675,000.00 and pursuant to the other terms set forth in the Agreement, or to the Highest Bidder at the Hearing if Buyer is not the Highest Bidder.

17. The Sales Price offered by Buyer is the highest and best offer that I received as of the date of the Motion that has not been withdrawn. I believe the Sales Price represents the fair market value for the Real Property, including personal property at the Real Property, considering current real property and insurance market conditions, the condition of the Real Property, and the marketing efforts of Estate Broker, including listing of the Real Property on the MLS and the Internet Sites.

18. I have no relationship to or with Buyer and am not related to Buyer in any manner. I reviewed Debtor's schedules and the claims register and claims filed in the Case. Based on this review, I determined that Buyer is not a creditor of the Estate. I believe that Buyer is a good faith purchaser. Buyer and I negotiated at "arm's-length."

19. Estate Broker provided me with information necessary to satisfy me that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

20. Mission prepared the Estimated Closing Statement to assist me with analysis of the amounts to be paid through the Sale Escrow from the Sales Price.

21. As described in the Motion and in the exhibits attached to the this declaration, the Sales Price ($4,675,000.00) will provide payment as follows:

a. the Total LAPFCU Payoff secured by the LAPFCU Lien to be divided between (1) LAPFCU for the LAPFCU Payment of $50,000.00 and

Nazaryan/sale motion                    44.

(2) the Estate for the Estate Payment of $78,382.31 pursuant to the LAPFCU Stipulation and the LAPFCU Order;

b.    the First TD Payoff secured by the First TD to be paid to First TD Holder, estimated to total approximately $3,085,186.35 as of July 31, 2025;

c.    the Second TD Payment, that is, the secured portion of the debt related to the Second TD to be paid to Second TD Holder subject to and limited by (1) the Second TD Payoff, (2) the reduction for administrative fees and expenses to be paid to the Estate per 11 U.S.C. §506(c) as approved by the Court, and (3) the sale proceeds available after paying the LAPFCU Payment, the Estate Payment, the First TD Payoff, the Property Tax, the HOA Fees, the Broker Commissions, and the Other Closing Costs;

d.    the Property Tax;

e.    the HOA Fees;

f.    the Broker Commissions; and

g.    the Other Closing Costs.

22.    I reserve all rights to object to the validity, scope, and priority of all disputed liens, claims and/or interests, if necessary, which will attach to the funds received by the Estate from the sale in the same priority, validity, and scope as such liens currently exist against the Real Property but the Real Property will be sold free and clear of all liens, claims and/or interests, except for the HERO Lien that Buyer is assuming per its terms.  No liens or exemption may attach to the Estate Payment.

23.  There is no remaining value in the Real Property collateral to which the U.S. Restitution Liens can attach and, consequently, the debt secured by the U.S. Restitutions Liens is

Nazaryan/sale motion    45.

unsecured.  Based on the value of of the Real Property collateral, the debt secured by the Second TD is limited and part of Second TD Holder's debt is unsecured.

24.  The Motion seeks approval and authorization for me to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer, or Highest Bidder at the Hearing on the Motion if it is not Buyer, and to pay the LAPFCU Payment, the Estate Payment, the First TD Payment, the Property Tax, the HOA Fees, the Broker Commissions, the Other Closing Costs, and the Second TD Payment.

25.  By the Motion, I seek the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $4,675,000.00, and pursuant to the other terms and conditions set forth in the Agreement, or to the Highest Bidder for the highest bid as determined at the Hearing. The Agreement includes all personal property at the Real Property. Debtor listed personal property in his schedules with a value of $1,000.00 and claimed an exemption in such personal property of $1,000.00.  I relied on these schedules and intend to pay Debtor the claimed exemption of $1,000.00 at the conclusion of the Case unless such exemption is disallowed by the Court after considering an objection to such exemption.

26.  I incurred administrative expenses to insure, protect, maintain, and administer the Real Property that is the collateral of First TD Holder and Second TD Holder.  These administrative fees and expenses incurred by me include the cost of insurance premium, pool service, repair charges, locksmith charges, gardening/hauling/clean-up services, HOA fees, utility payments and

Nazaryan/sale motion                    46.

other costs advanced by Z&H, and other costs and fees of administration.

27. Second TD Holder has not agreed to any reduction in the Second TD Payment for the Estate's additional administrative fees and expenses that are sought as a surcharge against the Second TD Payment pursuant to 11 U.S.C. §506(c). These payments and expenses include fees and expenses for Special Counsel, Estate Accountant, and additional administrative fees and costs to be advanced by me and/or Z&H on my behalf.

28. I incurred fees for Special Counsel to assist me with legal issues and procedures to obtain vacancy of the Real Property that was necessary to preserve and dispose of the Real Property. The current fees incurred by the Estate for these legal services total approximately $1,400.00.

29. I anticipate incurring fees for Estate Accountant who has been engaged to review and analyze any tax consequences of the sale, prepare Estate tax returns, and provide other services required by the Estate that relate to preservation and disposition of the Real Property.

30. To date, I performed all other administrative and legal work in this Case that has been required to preserve and dispose of the Real Property. I did not have to engage a field agent as Estate Broker assisted me with numerous tasks related to preservation of the Real Property.

31. I request the Retained Funds of $50,000.00 from the Second TD Payment to be disbursed to and retained by the Estate and to be applied to payment of additional administrative fees and expenses pursuant to 11 U.S.C. §506(c) as approved by the Court.

32.   The Claims Bar Date in the Case is July 21, 2025 and October 14, 2025 for the Government Claims Bar Date.  To date, creditors filed five (5) unsecured claims in the total amount of $50,431.47.

33.   I intend to set aside $40,000.00 (51%) of the Estate Payment for distribution to unsecured creditors.

34.   There are other assets in the Case that I am administering.  I estimate that any funds recovered from the Second Adversary will be available for the payment of allowed administrative fees and expenses and for distribution to unsecured creditors.   I estimate that unsecured creditors will receive a meaningful distribution for their respective claims based on the facts and circumstances of this Case.

35.   I consulted with Estate Accountant and estimate that there will be no capital gains tax owed by the Estate as a result of the proposed sale.

36.   A true and correct copy of the legal description for the Real Property is attached as Exhibit A to this declaration and incorporated herein by reference.

37.   A true and correct copy of the Agreement is attached as Exhibit B to this declaration and incorporated herein by reference.

38.   A true and correct copy of the Estimated Closing Statement is attached as Exhibit C to this declaration and incorporated herein by reference.

.  .  .  .  .

.  .  .  .  .

.  .  .  .  .

.  .  .  .  .

Nazaryan/sale motion                    48.

39.  A true and correct copy of the PTR is attached as Exhibit D to this declaration and incorporated herein by reference.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of June, 2025, at Los Angeles, California.

_____
NANCY HOFFMEIER ZAMORA

# EXHIBIT  A

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

ALL OF LOT 32 OF TRACT NO. 33915, IN THE CITY OF CALABASAS, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 1045, PAGES 88 TO 93 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY OF LOS ANGELES AND THAT PORTION OF LOT 33 OF SAID TRACT NO. 33915 LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE SOUTHERLY TERMINUS OF THAT CERTAIN COURSE IN THE WESTERLY LINE OF SAID LOT 33 HAVING A BEARING OF NORTH 5° 54 43" EAST AND A DISTANCE OF 45.00 FEET THENCE NORTH 5° 54' 43" EAST ALONG SAID WESTERLY LINE 23.07 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 84° 28' 08" EAST 147.01 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 33.

EXCEPT THEREFROM ALL RIGHTS TO MINERALS, OIL, GAS, TARS, HYDROCARBON AND METALLIFEROUS SUBSTANCES OF EVERY KIND, TOGETHER WITH THE RIGHT TO DRILL OR, MINE FOR SAME, WITHOUT, HOWEVER, THE RIGHT TO DRILL OR MINE THROUGH THE SURFACE OF THE UPPER 500 FEET OF THE SUBSURFACE OF THE PROPERTY.

NOTWITHSTANDING THE RESERVATION CONTAINED HEREIN, GRANTOR SHALL HAVE NO RIGHT OF SURFACE ENTRY, NOR SHALL THE RESERVATION OF THE RIGHT TO DRILL OR MINE BE CONDUCTED IN ANY WAY OR MANNER WHICH WAY NOW, OR IN THE FUTURE, AFFECT OR INTERFERE WITH EITHER THE DEVELOPMENT OF THE SUBJECT PROPERTY BY GRANTEES OR THE FUTURE ENJOYMENT OF USE THEREOF BY ANY THIRD PARTY, AS PROVIDED IN THE GRANT DEED RECORDED JUNE 28, 1983 AS INSTRUMENT NO. 1983-724245, OFFICIAL RECORDS.

ASSESSOR'S PARCEL NUMBER: 2069-033-066

# EXHIBIT  B

## PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS
## (RESIDENTIAL PROPERTY)

This purchase and sale agreement and escrow instructions (the "Agreement") is entered into as of May 28, 2025 (the "Execution Date") by and between Avi Matatiaho and Minoo Kahen ("Buyer") and Nancy Hoffmeier Zamora ("Trustee") in her capacity as chapter 7 trustee for the bankruptcy estate (the "Estate") of debtor Hovhannes Nazaryan.  Together, Buyer and Trustee hereinafter shall be referred to as the "Parties."

### RECITALS

A.      That certain residential real property (the "Real Property") commonly known as 24366 La Masina Court, Calabasas, California 91302 and identified as Los Angeles County Assessessor's Parcel No. 2069-033-066 is an asset of the Estate.

B.      Trustee is the duly appointed chapter 7 trustee for the Estate.

C.      Subject to approval by the United States Bankruptcy Court (the "Bankruptcy Court"), Section 363(f) of the United States Bankruptcy Code authorizes Trustee to sell the Real Property free and clear of any interests and liens pursuant to the Agreement.

D.      Article 1.5 ("Article 1.5") of the California Civil Code ("Civil Code") requires disclosures by sellers upon the transfer of residential real property (Civil Code section 1102 et seq.).  Civil Code section 1102.2 of the Civil Code exempts Trustee from the provisions of Article 1.5.

### AGREEMENT

In consideration of the mutual covenants and agreements reflected herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, the Parties to this Agreement agree as follows:

1.      **Purchase of the Real Property**.  Buyer shall purchase the Real Property from the Estate for a total sales price of $4,700,000.00  (the "Purchase Price") payable in cash upon Close of Escrow (as defined below in Paragraph 6).

2.      **Purchase of Personal Property**.  The Purchase Price shall include Buyer's purchase of all existing furniture, fixtures and fittings (the "Personal Property") attached to or located at the Real Property free and clear of liens and without Trustee's warranty.  Buyer acknowledges that former occupants of the Real Property may have caused waste to the Real Property by, among other things, removing various fixtures, fittings, and appliances from the Real Property.

3.      **As-Is; Where-Is**.  Buyer agrees to purchase the Real Property and the Personal Property on an "as-is, where-is" basis that exists at the time of the Close of Escrow.  Buyer acknowledges that Trustee made no investigation of nor makes any representation or warranty regarding the condition of the Real Property and the Personal Property.  Buyer acknowledges that occupants of the Real Property may have caused damage and  waste to the Real Property and the Personal Property.

4.      **Earnest Money Deposit**.

        a.      **Escrow Account**.  Buyer shall deposit $141,000.00 (the "Earnest Money") with Escrow Holder (as defined below in Paragraph 6) on May 29, 2025. (as defined below in Paragraph 5).  The  Earnest Money shall be in the form of a cashier's check or wire transfer made payable to Escrow Holder.  Escrow Holder shall apply the Earnest Money to the Purchase Price upon Close of Escrow.

        b.      **Refund of the Earnest Money**.  Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer if the Parties cancel Escrow pursuant to Paragraph(s) 5, 8, 15, and/or 16 (as provided below in Paragraph 6(g)(2)).

Matatiaho counter.001

Trustee   AM Buyer   MK

Page 1 of 9

c.    **Surrender of the Earnest Money**. As provided below in Paragraph 17, Buyer shall surrender the Earnest Money to Trustee as liquidated damages if the Bankruptcy Court approves Buyer's purchase of the Real Property, then Buyer defaults under this Agreement.

5.    **Motion for Order Approving Sale of Real Property**.

a.    **Buyer Acknowledgment**. Buyer acknowledges that sale of the Real Property pursuant to this Agreement is subject to prior approval by the Bankruptcy Court. As such, the Bankruptcy Court's approval of this Agreement is a contingency of sale.

b.    **Sale Motion and Hearing**.

(1)    **Motion**. After the Parties execute this Agreement, Trustee shall file with the Bankruptcy Court a motion (the "Sale Motion") for order approving sale of the Real Property free and clear of any interests and liens, subject to overbid, and a notice of hearing (the "Overbid Hearing") on the Sale Motion. Trustee shall attach this Agreement as an exhibit to the Sale Motion.

(2)    **Order**. At the conclusion of the Overbid Hearing, Trustee shall lodge a proposed order with the Court approving sale of the Real Property to Buyer pursuant to this Agreement or to the highest bidder approved by the Bankruptcy Court at the Overbid Hearing. Upon the Bankruptcy Court's entry of the order approving Trustee's sale of the Real Property to Buyer (as the highest bidder) pursuant to this Agreement (the "Sale Order"), Trustee shall deposit a certified copy of the Sale Order into Escrow.

(3)    **Buyer Not Approved**. If the Bankruptcy Court does not approve Buyer to purchase the Real Property, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

6.    **Escrow**.

a.    **Opening Escrow**. This sale shall be consummated through an escrow ("Escrow") established with Mission Escrow ("Escrow Holder"), located at 15910 Ventura Boulevard, Suite 1160, Encino, California, 91436. By no later than May 20, 2025, the Parties shall deposit this Agreement with Escrow Holder, which deposit shall open Escrow for sale of the Real Property.

b.    **Earnest Money**. Upon receipt of the Earnest Money, Escrow Holder shall deposit the Earnest Money into an escrow account established exclusively for the purpose of selling the Real Property.

c.    **Joint Escrow Instructions to Escrow Holder**. The applicable portions of this Agreement shall constitute joint escrow instructions (the "Joint Escrow Instructions") of Trustee and Buyer to Escrow Holder.

d.    **Supplemental Escrow Instructions**. The Joint Escrow Instructions may be modified and/or supplemented pursuant to addenda executed by the Parties. Trustee and Buyer acknowledge that Escrow Holder will ask the Parties to execute general escrow provisions (the "Supplemental Escrow Instructions") that control the duties and obligations of Escrow Holder only. To the extent the Supplemental Escrow Instructions conflict with this Agreement or the Joint Escrow Instructions, this Agreement and the Joint Escrow Instructions, not the Supplemental Escrow Instructions, shall control the rights, duties, and obligations of the Parties.

e.    **Closing Date**. Close of Escrow shall occur on the first business day that is at least fifteen (15) days after entry of the Sale Order (the "Closing Date"). The Parties can accelerate or extend the Closing Date by executing an amendment to this Agreement that provides for an earlier or later Closing Date that is consistent with the Sale Order.

f.    **Close of Escrow**. "Close of Escrow" shall occur when Escrow Holder records the Quitclaim Deed (as defined below in Paragraph 15) transferring fee title to the Real Property from the Estate to Buyer.

Matatiaho counter.001

2.

Authentisign ID: 356A6E38-343C-F011-A5F1-000D3A8A9062

g.    **Cancellation of Escrow**.

(1)    **Buyer Default**. If Close of Escrow does not occur by the Closing Date because Buyer defaults on Buyer's obligations pursuant to this Agreement, Buyer agrees to forfeit the Earnest Money to Trustee and the Estate as provided below in Paragraph 17.

(2)    **Cancellation Pursuant to Contingency**. If Buyer cancels Escrow pursuant to Paragraph(s) 5, 8, 15, and/or 16 of this Agreement, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

(3)    **No Prejudice**. Cancellation of Escrow as provided herein shall be without prejudice to whatever legal rights Trustee and Buyer may have against each other.

h.    **Preliminary Closing Statements**. No less than five (5) business days prior to Close of Escrow, Escrow Holder shall provide Trustee with preliminary closing statements (the "Preliminary Closing Statements") for both Trustee as seller of the Real Property and Buyer as purchaser of the Real Property.

i.    **Closing Documents**. No less than five (5) business days prior to Close of Escrow, Escrow Holder shall provide the Parties with any and all documents that the Parties must execute and deposit with Escrow Holder prior to Close of Escrow.

7.    **Balance of Purchase Price**. Buyer shall deposit the balance of the Purchase Price (the "Purchase Price Balance"), i.e.,$4,559,000.00   based on the Purchase Price of $4,700,000.00 and the Earnest Money of $141,000.00, into Escrow in the form of cash or by wire transfer at least one (1) business day before the Closing Date or by cashier's check during business hours at least two (2) business days before the Closing Date. After paying all approved costs and liens, Escrow Holder shall pay a distribution to the Estate from the Purchase Price Balance to Trustee by check made payable to "Nancy Hoffmeier Zamora, Chapter 7 Trustee, Nazaryan Estate."

8.    **Inspection Contingency**. Buyer may cancel Escrow on or before 5:00 p.m. on June 5, 2025 (the "Contingency Deadline") based on Buyer's inspection of the Real Property. Buyer shall notify Trustee in writing that Buyer is canceling Escrow based on Buyer's inspection of the Real Property and Buyer's ability to obtain an insurance policy for the Real Property. If Buyer cancels Escrow pursuant to this inspection contingency, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

9.    **No Loan Contingency**.

a.    **Buyer Representation**. Buyer represents that  Buyer is not relying on financing to close Escrow by the Closing Date and financing is not a contingency of this Agreement.

b.    **Close of Escrow**. Buyer agrees to deposit funds equal to the Purchase Price Balance and Buyer's closing costs by the Closing Date as provided in Paragraph 7.

10.    **Closing and Possession**.

a.    **Delivery**. Trustee shall deliver possession and occupancy of the Real Property to Buyer on the Closing Date.

b.    **Assignable Warranty Rights**. Upon Close of Escrow, to the extent permitted by law and/or contract, Trustee shall hereby assign warranty rights, if any, for the Personal Property.

c.    **Access**. Upon Close of Escrow, Trustee shall provide Buyer all keys and or means to operate all locks, mailboxes, security systems, alarms, and garage door openers that are in Trustee's possession or control, if any.

Authentisign ID: 356A6F38-343C-F011-A5F1-000D3A8A9062

11.    **Reports and Disclosures.**

        a.    **Pest Control.** Trustee shall not pay for or provide Buyer with a pest control report for the Real Property as a condition of sale. Trustee has made no investigation of and makes no representation or warranty regarding the physical condition of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

        b.    **Natural Hazard Zone Disclosure Report.** Buyer acknowledges that Civil Code section 1103.2(a)(1) specifically exempts transfers of real property by a trustee in bankruptcy. Accordingly, Buyer acknowledges that Trustee shall not pay for or otherwise provide a natural hazard zone disclosure report (the "NHZD Report") for Buyer's review prior to Close of Escrow. If Buyer and/or Title Company (as defined below in Paragraph 15) require a NHZD Report in order to close Escrow, Buyer shall pay for the NHZD Report. Trustee has made no investigation of and makes no representation or warranty regarding the physical condition of the Real Property or the location of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

        c.    **Data Base Disclosure Addendum (Megan's Law).** Buyer acknowledges that Civil Code section 2079.10a (referring to Civil Code section 1102) specifically exempts transfers of real property by a trustee in bankruptcy from the requirements of 2079.10a, commonly referred to as "Megan's Law." Accordingly, Buyer acknowledges that Trustee will not execute a "Data Base Disclosure Addendum (Megan's Law)" as a condition for closing Escrow. Trustee has made no investigation of and makes no representation or warranty regarding the existence or non-existence of convicted sex offenders or other criminals in the neighborhood surrounding the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

        d.    **Real Estate Transfer Disclosure Statement.** Buyer acknowledges that Civil Code section 1102 specifically exempts from the provisions of Article 1.5 transfers of real property by a trustee in bankruptcy. Buyer acknowledges that Article 1.5 requires, among other things, disclosures by sellers upon the sale of residential real property. Accordingly, Buyer acknowledges that Trustee will not provide Buyer with a Real Estate Transfer Disclosure Statement or addenda thereto, including, without limitation, an "Airport Proximity Addendum for Los Angeles County." Trustee has made no investigation and makes no representation or warranty regarding the Real Property, the neighborhood surrounding the Real Property, or the general location of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

        e.    **Mello-Roos Community Facilities Act.** Trustee has made no investigation and makes no representation or warranty regarding any special taxes assessed against the Real Property by a local agency pursuant to the Mello-Roos Community Facilities Act ("Mello-Roos").

12.    **Prorations of Property Taxes and Other Items.**

        a.    **Buyer and Trustee.** The following items shall be paid current and prorated between Buyer and Trustee as of Close of Escrow:

                (1)    real property taxes and assessments;

                (2)    interest;

                (3)    rents;

                (4)    municipal utilities;

                (5)    payments on bonds and assessments assumed by Buyer, if any;

                (6)    payments on Mello-Roos and other special assessment district bonds and assessments, if any, which are now a lien;

                (7)    homeowner association fees; and

                (8)    any and all other items identified by Escrow Holder in the Preliminary Closing Statements and approved by the Parties prior to Close of Escrow.

Matatisho counter.001

4.

Authentisign ID: 356A6F38-343C-F011-A5F1-000D3A8A9062

b.    **Buyer**. Buyer shall be responsible for prorated payments on Mello-Roos and other special assessment district bonds and assessments that are now a lien but not yet due.

c.    **Supplemental Tax Bills**. For periods after Close of Escrow, Buyer shall be responsible for any and all supplemental taxes assessed against the Real Property. For periods prior to Close of Escrow, Trustee shall be responsible for any and all supplemental taxes assessed against the Real Property.

13.    **Additional Buyer Costs**. In addition to costs allocated to Buyer by other provisions of this Agreement, Buyer shall pay for the cost of:

a.    smoke detector installation, carbon monoxide detector installation and/or water heater bracing, if required by law;

b.    compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing Escrow under any law;

c.    fifty percent (50%) of the escrow fees ("Escrow Fees") charged by Escrow Holder;

d.    homeowner's warranty policy; and

e.    the NHZD Report.

14.    **Additional Trustee Costs**. Trustee shall pay for the cost of the following:

a.    county transfer tax or transfer fee;

b.    city transfer tax or transfer fee;

c.    fifty percent (50%) of the Escrow Fees;

d.    title insurance policy;

e.    delinquent real property taxes;

f.    city and/or county assessments; and

g.    homeowner association transfer and document costs and delinquent fees.

15.    **Title and Vesting**.

a.    **Preliminary Title Report**. By 5:00 p.m. on May 29, 2025, Trustee will procure and deposit with Escrow Holder a preliminary title report ("PTR") issued by First American Title Company ("Title Company"). Escrow Holder, upon receipt of PTR, shall provide PTR to Buyer for review and approval. Buyer shall have until 5:00 p.m. on June 5, 2025 (the "Contingency Deadline") to notify Trustee, in writing, of Buyer's disapproval of any exception in the PTR. If Buyer fails to disapprove any exceptions in the PTR by the Contingency Deadline, Buyer shall be deemed to have waived any and all objections to the PTR. If Buyer timely notifies Trustee of Buyer's disapproval and Trustee is unwilling or unable to cure or otherwise address the exception to Buyer's satisfaction, not to be unreasonably withheld, then the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

b.    **Quitclaim Deed**. At Close of Escrow, Buyer shall receive a quitclaim deed (the "Quitclaim Deed") transferring title ("Title") to the Real Property from the Estate to Buyer. Unless otherwise designated in Buyer's escrow instructions, title shall vest as follows: Avi Matatiaho and Minoo Kahen. Title shall include oil, mineral and water rights, if any, appurtenant to the Real Property. Title shall be subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters which are of record or are disclosed to Buyer prior to Close of Escrow.

Matatiaho counter.001

5.

AM Buyer    MK

Page 5 of 9

c.      **Title Insurance**. Trustee shall procure from Title Company a California Land Title Association ("CLTA") standard policy of title insurance in the amount of the Purchase Price to be approved by Buyer, showing title vested in Buyer, as stated above, with only those exceptions to title approved by Buyer on the PTR produced by the Title Company.

d.      **Real Property Insurance**. Trustee's hazard and casualty insurance on the Real Property shall be canceled as of the Closing Date, and Buyer shall be responsible for obtaining insurance coverage as of the Closing Date.

16.     **Contingency and Cancellation Rights**.  If Buyer removes any contingency or cancellation right as provided herein, Buyer shall conclusively be deemed to have:

a.      completed all inspections, investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right;

b.      elected to proceed with purchasing the Real Property pursuant to this Agreement; and

c.      assumed all liability, responsibility, and expense for repairs or corrections pertaining to that contingency or cancellation right.

17.     **LIQUIDATED DAMAGES. If Buyer fails to complete the purchase contemplated by this Agreement because of Buyer's default, Trustee shall retain the Earnest Money as liquidated damages and shall be released from any further obligation to sell the Real Property to Buyer. Escrow Holder shall release the Earnest Money to Trustee upon receiving Trustee's written notification that Buyer has defaulted under the terms of this Agreement.  No signature shall be required from Buyer.**

Buyer's Initials         Trustee's Initials

18.     **Additional Obligations**.

a.      **Withholding Taxes**. Trustee and Buyer agree to execute and deliver any instrument, affidavit, statement, or instruction reasonably necessary to comply with federal and state tax withholding laws.

b.      **Additional Documents**. Trustee and Buyer agree to take such further action and execute all such further documents as may be necessary or appropriate in order to consummate this Agreement.

19.     **Broker Compensation**.

a.      **Broker's Fee**. Subject to approval by the Bankruptcy Court, in consideration of real estate brokerage services rendered, Trustee agrees to pay The ONE Luxury Properties ("Estate Broker") upon Close of Escrow, subject to approval of the Bankruptcy Court, a real estate brokerage fee equal to two (2.0%) of the Purchase Price.  Also subject to approval by the Bankruptcy Court, Trustee agrees to pay Keller Williams Calabasas, Buyer's realtor ("Buyer Broker") a fee equal to two percent (2.0%) of the Purchase Price.

b.      **Failure to Close Escrow**.  No commission or other fee shall be payable to Estate Broker or Buyer Broker if Escrow fails to close.  Trustee and Buyer acknowledge that no other broker's commission or finder's fee is payable with regard to this transaction.

c.      **Indemnification**. Trustee and Buyer each ("Indemnitor") agrees to indemnify and hold the other harmless from and against all liability, claims, demands, damages, or costs of any kind arising from or connected with any broker's or finder's fee or commission or charge claimed to be due any person arising from Indemnitor's conduct with respect to this transaction, other than the commissions authorized in this paragraph.

20.    **Miscellaneous**.

  a. **Disputes**. The Bankruptcy Court shall have sole and exclusive jurisdiction over any dispute between the Parties over the terms of this Agreement and over any transaction or event referenced or contemplated by this Agreement.

  b. **Bankruptcy Court Jurisdiction**. The Bankruptcy Court shall have continuing jurisdiction to interpret and enforce this Agreement.

  c. **Attorneys' Fees**. The prevailing party in any dispute arising out of this Agreement shall be entitled to recover as an element of its costs of suit, and not as damages, reasonable attorneys' fees and costs to be fixed by the Bankruptcy Court. The "prevailing party" shall be the party who is entitled to recover its costs of suit, whether or not said suit proceeds to final judgment. A party not entitled to recover its costs shall not recover attorney's fees. No sum for attorneys' fees shall be included in calculating the amount of a judgment for purposes of deciding whether a party is entitled to its costs or attorneys' fees.

  d. **Time of the Essence**. Time is of the essence of each provision of this Agreement in which time is an element. Unless the context otherwise requires, all periods terminating on a given day, period of days, or date, shall terminate at 5:00 p.m., Pacific Daylight Savings Time, on that day or date, and reference to "days" shall refer to calendar days.

  e. **Amendment and Waiver**. Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

  f. **Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective successors and assigns.

  g. **Headings**. Paragraph headings contained in this Agreement are for reference purposes only, and shall not affect in any way the meaning or interpretation of this Agreement.

  h. **Third Party Rights**. Except with respect to the releases provided for above, no rights are intended to be created in any person not a party to this Agreement.

  i. **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together constitute one and the same instrument.

  j. **Entire Agreement**. This Agreement sets forth the entire agreement among the Parties and fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter of this Agreement.

  k. **Understanding of the Parties**. The Parties have each read this Agreement carefully, and the contents hereof are known and understood by all, and the Agreement is signed freely by each person executing this Agreement. Prior to the execution of this Agreement by the Parties, and each of them, each of the Parties hereto has had the opportunity to receive independent legal advice by attorneys of his or her choice with respect to the advisability of executing this Agreement.

  l. **No Statements, Representations, and/or Reliance**. Except as expressly stated in this Agreement, neither of the Parties hereto has made any statement or representation to any other party regarding any fact relied upon by such other party entering into this Agreement, and each of the Parties specifically does not rely upon any statement, representation or promise of any other party in executing this Agreement, except as expressly stated in this Agreement.

  m. **Construing the Agreement**. This Agreement shall be construed without regard as to which party drafted the Agreement, and this Agreement shall be construed as if the Parties hereto participated equally in the drafting of the Agreement.

Matatiaho counter.001

7.

Trustee

AM Buyer

MK

Page 7 of 9

Authentisign ID: 356A6F38-343C-F011-A5F1-000D3A8A9962

n.     **Applicable Law**. This Agreement shall be construed in accordance with, and governed by, the laws of the State of California and applicable federal law.

o.     **Severability**. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law, but if any provision of this Agreement shall be invalid, or prohibited thereunder, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

p.     **Recitals**. The recitals at the beginning of this Agreement are incorporated herein by this reference.

q.     **Terms**. Whenever the singular number is used in this Agreement, and when required by the context, the same shall include the plural, and the masculine, and feminine and neuter genders shall each include the others.

r.     **Representations and Warranties**. All representations and warranties contained herein shall survive the execution and delivery of this Agreement. All obligations of the Parties to this Agreement which have not been fully performed, paid and satisfied as of the Execution Date, shall survive the execution and delivery of this Agreement.

## SIGNATURES OF THE PARTIES

### OFFER

As of the Execution Date, the undersigned offers and agrees to buy the Real Property on the terms and conditions stated in this Agreement and acknowledges receiving a copy of this Agreement.

**BUYER:**

*Avi Matatiaho*     05/28/25        *Minoo Kahen*     05/28/25
Avi Matatiaho                           Minoo Kahan

### ACCEPTANCE

As of the Execution Date, Trustee accepts the foregoing offer to purchase the Real Property and agrees to sell the Real Property to Buyer on the terms and conditions specified in this Agreement. Trustee acknowledges receipt of a copy of this Agreement and authorizes Estate Broker to deliver a signed copy to Buyer.

**ESTATE:**

By:     *Nancy Hoffmeier Zamora*
Nancy Hoffmeier Zamora, Esq., Trustee
Chapter 7 Estate of Hovhannes Nazaryan
In re Hovhannes Nazaryan, Case No. 1:25-bk-10617-MB

Matatiaho counter.001

8.

Page 8 of 9

## SIGNATURES OF THE BROKERS

### BROKERS' CONSENT

Estate Broker and Buyer Broker consent to the commission provision in Paragraph 19 above. By signing below, Estate Broker and Buyer Broker each acknowledges that any and all disputes arising under this Agreement or related to the sale of the Real Property are subject to the jurisdiction of the Bankruptcy Court. The signing of this paragraph shall not result in Estate Broker and Buyer Broker being deemed parties to this Agreement.

### ESTATE BROKER:

*Behnaz Tavakoli*  5/28/25

Behnaz Tavakoli, Real Estate Agent
The ONE Luxury Properties

### BUYER BROKER:

— AuthentiSIGN
*David Randal Smith*      05/28/25

David Randal Smith, Real Estate Agent
Keller Williams Calabasas

Matatiaho counter.001

9.



Page 9 of 9

Authentisign ID:

**CALIFORNIA ASSOCIATION OF REALTORS®**

# REQUEST FOR REPAIR No. ___1___
### (C.A.R. Form RR, Revised 12/23)

**Date Prepared:** _06/05/2025_

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Other _____
_____ ("Agreement"),
dated _05/30/2025_ , on property known as _24366 La Masina Court, Calabasas, CA  91302_ _____ ("Property"),
between _____ _Avi  Matatiaho, Minoo Kahen_ _____ ("Buyer"),
and _____ _Chapter 7, Bankruptcy Trustee_ _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REQUEST (Check all that apply): (Note: Seller has no obligation to respond to Buyer request.)**
   A. ☐ Buyer requests that Seller, prior to final verification of condition, repair or take the other specified action for each item listed below or ☐ on the attached list dated _____ :
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   B. (i) ☐ **SECTION 1:** Buyer requests Seller pay to have Section 1 work completed as specified in the attached Pest Control Report dated _____ prepared by _____
   (ii) ☐ **SECTION 2:** Buyer requests Seller pay to have Section 2 work completed as specified in the attached Pest Control Report dated _____ prepared by _____
   (iii) If Buyer requests either Section 1 or Section 2 work above, Seller shall, no later than **5 (or ___ ) Days** Prior to Close of Escrow, Deliver to Buyer a written pest control certification showing the corrective work has been completed.
   C. ☐ Buyer requests that Seller credit Buyer $ _____ at Close of Escrow.
   **(Note:** Any credit included in this paragraph is separate from and shall not reduce or supersede any other credit in the Agreement unless Otherwise Agreed. Credits need to be disclosed to Buyer's lender and total contractual credits may be limited pursuant to the Agreement. Total credit amount may not be enough to remedy all defects or repairs.)
   D. ☒ Buyer requests that Seller modify the purchase price. The revised purchase price shall be $_4,500,000.00_

2. **Attached Reports:** A copy of the following inspection or other report is attached.
   ☒ _General Home Inspection_ _____ ☐ _____
   ☒ _Wood Destroying Organisms & Pests_ _____ ☐ _____

3. **FHA or VA:** Buyer's FHA or VA lender requires specified actions in the appraisal or other lender documentation (if checked, ☐ attached).
   A. Buyer's FHA or VA lender requires the following items to be repaired. Buyer requests that Seller repair the following items, and Seller (or ☐ Buyer) shall pay for any such repair: _____
   _____
   _____
   _____
   _____

   B. Buyer requests that Seller pay for the following costs or expenses required by the FHA or VA lender: _____
   _____

4. If Seller agrees to all of Buyer's Requests, or some of Buyer's requests and Buyer accepts Seller's partial agreement below:
   A. (1) Buyer removes the Investigation of Property Contingency (**paragraph 3L(3) and 8C**), ☐ except the following:
   _____
   OR (2) ☒ Buyer removes those contingencies identified on the attached, Signed, Contingency Removal Form (C.A.R. Form CR)
   B. Buyer Releases Seller from any loss, liability, expense, claim or cause of action regarding the disclosed condition of the Property ("Release").

5. **EXPIRATION:** Buyer proposes this Request for Repairs (RR) which shall be deemed revoked:
   A. Unless by 5:00 PM on the third Day after it is signed by Buyer (or by _5:00_ ☐ AM/ ☒ PM on _06/06/2025_ date) the proposed RR is signed by Seller and a Copy of this RR is Delivered to Buyer.
   B. If Buyer withdraws this Request for Repair any time prior to Seller's acceptance by communicating withdrawal to Seller or Seller's Agent.

© 2023, California Association of REALTORS®, Inc.

**RR REVISED 12/23 (PAGE 1 OF 2)**        Buyer's initials  _AM_ / _MK_     Seller's initials _____ / _____

## REQUEST FOR REPAIR (RR PAGE 1 OF 2)

Keller Williams Calabasas, 23622 Calabasas Road, Suite 148 Calabasas CA 91302        Phone: 3104807523        Fax: 8184747414        Matatiaho
David Randal Smith        Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

Authentisign ID:

**6. EFFECT OF BUYER REQUEST:** BUYER MAKES THIS RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS RR, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

| | | | |
|---|---|---|---|
| Buyer: | *Avi Matatiaho* | Avi Matatiaho | Date 06/05/2025 |
| Buyer: | *Minoo Kahen* | Minoo Kahen | Date 06/05/2025 |

**SELLER RESPONSE: (check one)**

**Note to Seller: FHA/VA.** If the Parties do not reach agreement on completing the repairs and other actions specified in paragraph 3A of the Buyer FHA or VA section of Buyer Requests, Buyer's FHA or VA lender will not loan Buyer the funds needed to purchase the Property. If that happens, and there is a finance contingency that has not been removed, Buyer may cancel this Agreement (C.A.R. Form CC).

1. **Seller Agreement:**
    A. ☐ **All.** Seller agrees to all of Buyer's Requests.
    OR B. ☒ **Partial.** Seller only agrees to the following (Check all that apply)
        (1) ☐ Seller agrees to all of Buyer's Requests **except**: _____
        _____
        _____
        _____

        (2) ☐ Seller agrees to credit Buyer $_____ at Close of Escrow.
        (3) ☒ Seller agrees, to modify the purchase price. The revised purchase price shall be $ 4,575,000.00 .
        (4) ☐ Other _____

    C. ☐ **Additional Conditions:** Seller's agreement only applies if Buyer removes those contingencies identified on the attached Contingency Removal Form (C.A.R. Form CR) by Signing and Delivering it within the time specified in **paragraph 1D** below.
    D. **Expiration of Seller's partial/conditional agreement:**
        If paragraph **1B** or **1C** is checked, Seller's agreement to the RR may be withdrawn by Seller any time prior to Buyer's agreement in writing and shall be deemed revoked unless by 5:00PM on the third Day after it is signed by Seller (or by _____ ☐ AM/ ☐ PM on _____ date) AND it is re-signed by Buyer below and a copy of this RR is delivered to Seller.
OR 2. ☐ Seller responds to Buyer's request on the attached form (C.A.R. Form RRRR).
OR 3. ☐ Buyer's requests are not incorporated into the Agreement. Seller responds to Buyer's requests on the attached Amendment to Existing Agreement (C.A.R. Form AEA). No Seller signature is required on this RR.
OR 4. ☐ Seller does NOT agree to any of Buyer's requests

**SELLER RESPONSE:** SELLER RESPONDS TO BUYER'S RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS SELLER RESPONSE, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

| | | | |
|---|---|---|---|
| Seller: | *Nancy Hoffmeier Zamora* | **Chapter 7, Bankruptcy Trustee** Date | 06/05/25 |
| Seller: | | Date | |

**BUYER RESPONSE TO SELLER PARTIAL/CONDITIONAL AGREEMENT:** (DO NOT sign until after Seller responds above.)

☐ Buyer accepts Seller's partial/conditional agreement
OR ☐ Buyer does NOT accept Seller's partial agreement. Buyer withdraws Request for Repair No. ____ and makes a new request in the attached Request for Repair No. _____

**BUYER RESPONSE:** BUYER RESPONDS TO SELLER'S PARTIAL AGREEMENT ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS BUYER RESPONSE, ANY PREVIOUS BUYER RESPONSE, SELLER REPLY, OR SELLER PARTIAL AGREEMENT CAN NO LONGER BE ACCEPTED.

**Note to Buyer: FHA/VA.** If the Parties do not reach agreement on completing the repairs and other actions specified in **paragraph 3A** in the FHA or VA section of Buyer Requests, and you have already removed or do remove your financing contingency, even though you may no longer be eligible for the FHA or VA loan specified in the Agreement and may not be able to get another loan to purchase the property, you could be in breach of the Agreement if you are otherwise unable to pay Seller the purchase price.

| | | |
|---|---|---|
| Buyer: | | Date |
| Buyer: | | Date |

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RR REVISED 12/23 (PAGE 2 OF 2)**

**REQUEST FOR REPAIR (RR PAGE 2 OF 2)**

Authentisign ID: 89B...

# CALIFORNIA ASSOCIATION OF REALTORS®

## AMENDMENT OF EXISTING AGREEMENT TERMS No. ___1___

### (C.A.R. Form AEA, Revised 12/21)

This is a proposal to amend ("Amendment") the terms and conditions of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Other _____ ("Agreement"), which was already mutually executed by the Parties, dated ___**June 5, 2025**___, on property known as **24366 La Masina Ct., Calabasas, CA 91302** (Property), in which ____**Avi Matatiaho, Minoo Kahen**____ is referred to as "Buyer/Tenant" and ____**Nancy Hoffmeier Zamora; Chapter 7 Trustee**____ is referred to as "Seller/Landlord". Buyer and Seller are referred to as the "Parties."

1. **_Seller agrees to reduce the purchase price to $4,575,000.00_** _____

2. **EXPIRATION:** ☐ Buyer/Tenant, ☒ Seller/Landlord proposes this Amendment Of Existing Agreement Terms **(i)** which may be withdrawn by the Party initiating this proposed Amendment at any time prior to acceptance, and **(ii)** shall be deemed revoked unless by 5:00 PM on the third Day after it is Signed by the initiating Party (or by _____ ☐ AM ☐ PM on _____ date) this proposed Amendment is Signed by the other Party and a Copy of this Amendment is Delivered to the initiating Party.

   ☐ Buyer/Tenant, ☒ Seller/Landlord _*Nancy Hoffmeier Zamora*_   **Nancy Hoffmeier Zamora; Chapter 7** Date ___06/05/25___

   ☐ Buyer/Tenant, ☒ Seller/Landlord _____   Date _____

3. **ACCEPTANCE:** The foregoing terms and conditions amending the existing Agreement are hereby accepted, and the undersigned agrees to the above terms and conditions and acknowledges receipt of a Copy of this Amendment Of Existing Agreement Terms. Upon Acceptance, this Amendment shall be deemed incorporated into the Agreement.

   ☒ Buyer/Tenant, ☐ Seller/Landlord _*Avi Matatiaho*_   **Avi Matatiaho** Date ___06/05/25___

   ☒ Buyer/Tenant, ☐ Seller/Landlord _*Minoo Kahen*_   **Minoo Kahen** Date ___06/05/25___

**AMENDMENT NOT ACCEPTED:** _____/_____. This amendment was NOT accepted by Buyer/Tenant/Seller/Landlord on _____ (date).   Buyer/Tenant/Seller/Landlord Initials

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC,
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**AEA REVISED 12/21 (PAGE 1 OF 1)**



## AMENDMENT OF EXISTING AGREEMENT TERMS  (AEA PAGE 1 OF 1)

Authentisign ID: ~~[redacted]~~

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# AMENDMENT OF EXISTING AGREEMENT TERMS No. __2__
(C.A.R. Form AEA, Revised 12/21)

This is a proposal to amend ("Amendment") the terms and conditions of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Other _____ ("Agreement"), which was already mutually executed by the Parties, dated ___**May 30, 2025**___, on property known as **24366 La Masina Ct., Calabasas, CA 91302** _____ (Property), in which _____**Avi Matatiaho, Minoo Kahen**_____ is referred to as "Buyer/Tenant" and _____**Nancy Hoffmeier Zamora; Chapter 7 Trustee**_____ is referred to as "Seller/Landlord". Buyer and Seller are referred to as the "Parties."

1.  1. The purchase price to be $4,675,000.00
    2. Buyer will assume the notice of assessment lien and related obligation owed to L.A. County HERO Loan Program.

2.  **EXPIRATION:** ☐ Buyer/Tenant, ☒ Seller/Landlord proposes this Amendment Of Existing Agreement Terms **(i)** which may be withdrawn by the Party initiating this proposed Amendment at any time prior to acceptance, and **(ii)** shall be deemed revoked unless by 5:00 PM on the third Day after it is Signed by the initiating Party (or by _____ ☐ AM ☐ PM on _____ date) this proposed Amendment is Signed by the other Party and a Copy of this Amendment is Delivered to the initiating Party.

    ☐ Buyer/Tenant, ☒ Seller/Landlord _*Nancy Hoffmeier Zamora*_   **Nancy Hoffmeier Zamora; Chapter 7** Date __06/23/25__

    ☐ Buyer/Tenant, ☒ Seller/Landlord _____ Date _____

3.  **ACCEPTANCE:** The foregoing terms and conditions amending the existing Agreement are hereby accepted, and the undersigned agrees to the above terms and conditions and acknowledges receipt of a Copy of this Amendment Of Existing Agreement Terms. Upon Acceptance, this Amendment shall be deemed incorporated into the Agreement.

    ☒ Buyer/Tenant, ☐ Seller/Landlord _*Avi Matatiaho*_   **Avi Matatiaho** Date __06/24/25__

    ☒ Buyer/Tenant, ☐ Seller/Landlord _*Minoo Kahen*_   **Minoo Kahen** Date __06/24/25__

---

**AMENDMENT NOT ACCEPTED:** _____/_____. This amendment was NOT accepted by Buyer/Tenant/Seller/Landlord on _____ (date).     Buyer/Tenant/Seller/Landlord Initials

---

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**AEA REVISED 12/21 (PAGE 1 OF 1)**

**AMENDMENT OF EXISTING AGREEMENT TERMS  (AEA PAGE 1 OF 1)**

The One Luxury Properties, 5000 N. Parkway Calabasas Road Ste. 100 , Calabasas CA 91302     Phone: 8183267760     Fax: 818.222.7872     24366 La Masina
Behnaz Tavakoli                                 Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

# EXHIBIT C



15910 Ventura Blvd., #1160
Encino, CA 91436

Phone: (818) 864-9010
Fax: (818) 332-1620

## UPDATED SELLER'S ESTIMATED SETTLEMENT STATEMENT

**PROPERTY:** 24366 LA MASINA COURT
CALABASAS, CA 91302

**DATE:** June 24, 2025

**SELLER:** NANCY HOFFMEIER ZAMORA aka
NANCY J. ZAMORA, CHAPTER 7
TRUSTEE OF THE BANKRUPTCY
ESTATE OF HOVHANNES
NAZARYAN, DEBTOR, CASE NO.
1:25-BK-10617-MB

**CLOSING DATE:** July 31, 2025
**ESCROW NO.:** 002085-O1

| | DEBITS | CREDITS |
|---|---|---|
| **CONSIDERATION** | | |
| Total Consideration | | 4,675,000.00 |
| HERO LOAN TO BE ASSUMED BY BUYER | | |
| **PAYOFF CHARGES - LOS ANGELES POLICE FCU - AGAINST DEBTOR,HOVHANNES NAZARYAN** | | |
| **[Total Payoff $128,382.31]** | | |
| PAYMENT TO BANKRUPTCY ESTATE | 78,382.31 | |
| PAYMENT TO LA POLICE FCU | 50,000.00 | |
| | | |
| **PAYOFF CHARGES - AMWEST FUNDING CORP** | | |
| **[Total Payoff $3,085,186.35]** | | |
| PAYMENT TO AMWEST | 3,085,186.35 | |
| | | |
| **PAYOFF CHARGES - MEHRAN JAVAHERIAN** | | |
| **[]** | | |
| PAYMENT TO MEHRAN JAVAHERIAN LIMITED TO VALUE OF COLLATERAL | 1,171,051.01 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $41,204.93/semi-annually from 07/01/2025 to 07/31/2025 | 6,867.49 | |
| SUB HOA DUES at $305.00/monthly from 07/31/2025 to 08/01/2025 | | 10.17 |
| MASTER HOA DUES at $121.63/annually from 07/31/2025 to 04/01/2026 | | 81.42 |
| | | |
| **COMMISSION CHARGES** | | |
| THE ONE LUXURY PROPERTIES | 70,125.00 | |
| KELLER WILLIAMS CALABASAS | 70,125.00 | |
| | | |
| **H.O.A./MANAGEMENT** | | |
| Transfer Fee to ROSS MORGAN & COMPANY, INC. | 395.00 | |
| ESTIMATED DELINQUENT BALANCE + DUES MAY & JUNE &JULY to VISTA POINTE HOA | 3,258.50 | |

Date: June 24, 2025                                                    Escrow No.: 002085-O1

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| **H.O.A./MANAGEMENT** | | |
| Transfer Fee to ROSS MORGAN & COMPANY, INC. | 395.00 | |
| Annual Dues to CALABASAS PARK HOA | 121.63 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Estimate Only for Notary Fee | 150.00 | |
| CITY ONE LOCKSMITH | 629.00 | |
| EST - TRUSTEE INSURANCE AGENCY, INC. for insurance | 12,000.00 | |
| ZAMORA & HOFFMEIER - EST REIMBURSEMENT FOR UTILITIES & OTHER COSTS ADVANCED | 7,199.95 | |
| GERARDO GONZALEZ for clean up and gardening maintenance | 6,000.00 | |
| JOSE RUIZ for pool services | 750.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - FIRST AMERICAN TITLE COMPANY** | | |
| Title - Owner's Title Insurance | 6,000.00 | |
| Title - Wire/Messenger Fee | 150.00 | |
| Title - Sub Escrow Fee | 65.00 | |
| Transfer Tax - County to Los Angeles County | 5,142.50 | |
| 2024/25 DELINQUENT TAXES | 90,660.85 | |
| | | |
| **ESCROW CHARGES - Mission Escrow, Inc.** | | |
| Title - Escrow Fee | 9,512.00 | |
| Title - Archive Fee | 95.00 | |
| Title - Solar Doc Prop Fee (IF ANY) | 150.00 | |
| Title - Processing Fee | 395.00 | |
| Title - Wire Fee | 35.00 | |
| Title - HOA Doc Prep Fee (2) | 250.00 | |
| | | |
| **TOTAL** | $ 4,675,091.59 | $ 4,675,091.59 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

NANCY HOFFMEIER ZAMORA aka NANCY J.
ZAMORA, CHAPTER 7 TRUSTEE OF THE
BANKRUPTCY ESTATE OF HOVHANNES
NAZARYAN, DEBTOR, CASE NO. 1:25-BK-
10617-MB

By: _____
      NANCY HOFFMEIER ZAMORA aka NANCY J.
      ZAMORA, CHAPTER 7 TRUSTEE

# EXHIBIT  D

CLTA Preliminary Report Form                                          Order Number:  7255546
(Rev. 11/06)                                                          Page Number:  1



# First American Title Company

330 N. Brand Blvd. Suite 1150
Glendale, CA 91203
California Department of Insurance License No. 2549-4

| | |
|---|---|
| Title Officer: | Rich Miehl / Mina Chin |
| Phone: | (818)550-2501 |
| Fax No.: | (657)205-3879 |
| E-Mail: | TeamLA@firstam.com |

| | |
|---|---|
| E-Mail Loan Documents to: | Lenders please contact the Escrow Officer for email address for sending loan documents. |
| Owner: | Artur Nazaryan and Hovhannes Nazaryan |
| Property: | 24366 La Masina Court Calabasas, CA 91302 |

### PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

Please be advised that any provision contained in this document, or in a document that is attached, linked or referenced in this document, that under applicable law illegally discriminates against a class of individuals based upon personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or any other legally protected class, is illegal and unenforceable by law.

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of April 07, 2025 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance and ALTA Ext Loan Policy if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy (with Western Regional Exceptions) and the ALTA Loan Policy if the land described is an unimproved residential lot or condominium unit.

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

Artur Nazaryan, a single man and Hovhannes Nazaryan, a single man, as joint tenants, subject to proceedings pending in the U.S. Bankruptcy Court, Central District of California, entitled re: Hovhannes Nazaryan, debtor, Case No. 1:25-bk-10617-MB, wherein a petition for relief was filed under Chapter 7 on April 14, 2025

The estate or interest in the land hereinafter described or referred to covered by this Report is:

A Fee

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1. General and special taxes and assessments for the fiscal year 2025-2026, a lien not yet due or payable.

2. General and special taxes and assessments for the fiscal year 2024-2025.
   First Installment:          $41,204.94, Delinquent
   Penalty:                    $4,120.49
   Second Installment:         $41,204.93, Delinquent
   Penalty:                    $4,130.49
   Tax Rate Area:              11036
   A. P. No.:                  2069-033-066

3. Assessments and other matters as contained in document entitled Notice of Assessment and Payment of Contractual Assessment Required, recorded June 28, 2017 as Instrument No. 20170721586 of Official Records, pursuant to Chapter 29 of Part 3 of Division 7 of the California Streets and Highways

Order Number: 7255546
Page Number: 3

Code providing for the assessments of Improvements. Said assessments are collected with county taxes. The assessment may be prepaid.

4.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

5.    Water rights, claims or title to water, whether or not shown by the Public Records.

6.    An easement for pipe lines and incidental purposes in the document recorded in Book 18358 Page 382 of Official Records.

      And recorded in Book 19279 Page 10 of Official Records.

7.    Intentionally Deleted

8.    An easement for community antennae television system and incidental purposes in the document recorded February 23, 1968 as Instrument Nos. 3920 and 3921, both of Official Records.

      The location of the easement cannot be determined from record information.

9.    Intentionally Deleted

10.   The terms and provisions contained in the document entitled "Covenant" recorded January 28, 1983 as Instrument No. 83-724246 of Official Records.

11.   Conditions and restrictions which provide that the owners of any lot in said Tract shall not interfere with the established drainage without adequate provisions. "Established Drainage" is defined therein as it existed at the time of the overall grading of said Tract, including the landscaping of a lot, if any, as completed, recorded January 30, 1985 as Instrument No. 85-113529 of Official Records.

12.   Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded September 25, 1979 as Instrument No. 79-1065734 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

      Note: You may wish to contact the homeowners association referred to in the above document for information regarding assessments, transfer requirements or other matters.

      Document(s) declaring modifications thereof recorded April 1, 1980 as Instrument No. 80-327229 of Official Records.

Order Number:  7255546
Page Number:  4

Document(s) declaring modifications thereof recorded November 20, 1980 as Instrument No. 80-1170608 of Official Records.

Document(s) declaring modifications thereof recorded March 9, 1983 as Instrument No. 83-260957 of Official Records.

Document(s) declaring modifications thereof recorded July 8, 1983 as Instrument No. 83-771259 of Official Records.

A declaration of annexation recorded April 15, 1985 as Instrument No. 85-419994 of Official Records.

Document(s) declaring modifications thereof recorded September 28, 2000 as Instrument No. 00-1531709 of Official Records.

13.    The terms and provisions contained in the document entitled "Dedication of Property to Las Virgenes Municipal Water District for Public Use" recorded November 21, 1985 as Instrument No. 85-1387067 of Official Records.

14.    The terms and provisions contained in the document entitled "Dedication of Property to Las Virgenes Municipal Water District for Public Use Reclaimed Water System for Tract No. 33915" recorded February 25, 1988 as Instrument No. 88-254508 of Official Records.

15.    The terms and provisions contained in the document entitled "Notice of Intent to Preserve Interest" recorded December 13, 1993 as Instrument No. 93-2430604 of Official Records.

16.    A deed of trust to secure an original indebtedness of $3,000,000.00 recorded January 4, 2022 as Instrument No. 20220010067 of Official Records.
       Dated:                    December 28, 2021
       Trustor:                  Artur Nazaryan, a single man
       Trustee:                  Lawyers Title Company
       Beneficiary:              Mortgage Electronic Registration Systems, Inc.
       Lender:                   Amwest Funding Corp.

17.    A deed of trust to secure an original indebtedness of $1,200,000.00 recorded July 13, 2023 as Instrument No. 20230460230 of Official Records.

       Dated:                    July 10, 2023
       Trustor:                  Artur Nazaryan, a single man & Hovhannes Nazaryan, a single man, as joint tenants
       Trustee:                  Fidelity National Title Company
       Beneficiary:              Mehran Javaherian, a single man

Order Number: 7255546
Page Number: 5

Notes:
a. If this deed of trust is to be eliminated in the policy or policies contemplated by this report/commitment, we will require all of the following prior to the recordation of any documents or the issuance of any policy of title insurance:
i. Original note and deed of trust.
ii. Payoff demand statement signed by all present beneficiaries.
iii. Request for reconveyance signed by all present beneficiaries.
b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will also require a full copy of the loan servicing agreement executed by all present beneficiaries.
c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will require a certification pursuant to Section 18500.5 of the California Probate Code in a form satisfactory to the Company

A document recorded December 5, 2024 as Instrument No. 20240853733 of Official Records provides that Peak Foreclosure Services, Inc., a California corporation was substituted as trustee under the deed of trust.

A notice of default recorded December 5, 2024 as Instrument No. 20240853734 of Official Records.

A notice of trustee's sale recorded March 20, 2025 as Instrument No. 20250177123 of Official Records.

18. A Notice of Lien for Fine and/or Restitution Pursuant to Antiterrorism and Effective Death Penalty Act of 1996 in favor of the United States

| | |
|---|---|
| Against: | Artur Nazaryan |
| Amount: | $1,289,264.94 |
| Recorded: | August 14, 2024 as Instrument No. 20240546662 of Official Records. |

19. A certified copy of a judgment or an abstract thereof, recorded April 12, 2016 as Instrument No. 20160406059 of Official Records.

| | |
|---|---|
| Court: | Superior Court of California, County of Los Angeles |
| Case No.: | LC087239 |
| Debtor: | Hovhannes Nazaryan |
| Creditor: | Los Angeles Police Federal Credit Union |
| Amount: | $123,685.75, and any other amounts due thereunder. |

20. A Notice of Lien for Fine and/or Restitution Pursuant to Antiterrorism and Effective Death Penalty Act of 1996 in favor of the United States

| | |
|---|---|
| Against: | Hovhannes Nazaryan also known as John Hovo |
| Amount: | $1,289,264.94 |
| Recorded: | July 8, 2024 as Instrument No. 20240443289 of Official Records. |

21. This transaction may be subject to a Geographic Targeting Order ("GTO") issued pursuant to the Bank Secrecy Act. Information necessary to comply with the GTO must be provided prior to the closing. This transaction will not be insured until this information is submitted, reviewed and found to be complete.

Order Number: 7255546
Page Number: 6

Prior to the issuance of any policy of title insurance, the Company will require:

22.    Statements of information from all parties to the transaction.

23.    An Owner's Certification must be completed, executed, and returned to the Company.

---

| INFORMATIONAL NOTES |
| --- |

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.    This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

    When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence (Planned Unit Development) known as 24366 La Masina Court, Calabasas, California.

2.    According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

    None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number: 7255546
Page Number: 8

## LEGAL DESCRIPTION

Real property in the City of Calabasas, County of Los Angeles, State of California, described as follows:

ALL OF LOT 32 OF TRACT NO. 33915, IN THE CITY OF CALABASAS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 1045, PAGES 88 TO 93 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY OF LOS ANGELES AND THAT PORTION OF LOT 33 OF SAID TRACT NO. 33915 LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE:

COMMENCING AT THE SOUTHERLY TERMINUS OF THAT CERTAIN COURSE IN THE WESTERLY LINE OF SAID LOT 33 HAVING A BEARING OF NORTH 5° 54' 43" EAST AND A DISTANCE OF 45.00 FEET; THENCE NORTH 5° 54' 43" EAST ALONG SAID WESTERLY LINE 23.07 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 84° 28' 08" EAST 147.01 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 33.

EXCEPT THEREFROM ALL RIGHTS TO MINERALS. OIL, GAS, TARS, HYDROCARBON AND METALLIFEROUS SUBSTANCES OF EVERY KIND, TOGETHER WITH THE RIGHT TO DRILL OR MINE FOR SAME, WITHOUT, HOWEVER, THE RIGHT TO DRILL OR MINE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF THE PROPERTY. NOTWITHSTANDING THE RESERVATION CONTAINED HEREIN, GRANTOR SHALL HAVE NO RIGHT OF SURFACE ENTRY, NOR SHALL THE RESERVATION OF THE RIGHT TO DRILL OR MINE BE CONDUCTED IN ANY WAY OR MANNER WHICH WAY NOW, OR IN THE FUTURE, AFFECT OR INTERFERE WITH EITHER THE DEVELOPMENT OF THE SUBJECT PROPERTY BY GRANTEES OR THE FUTURE ENJOYMENT OF USE THEREOF BY ANY THIRD PARTY, AS PROVIDED IN THE GRANT DEED RECORDED JUNE 28, 1983 AS INSTRUMENT NO. 83-724245, OFFICIAL RECORDS.

APN: 2069-033-066

Order Number: 7255546
Page Number: 9



Order Number: 7255546
Page Number: 10

*NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

EXHIBIT A
LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)
CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE [(07-01-2021) v. 01.00]
EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.   the occupancy, use, or enjoyment of the Land;
        ii.  the character, dimensions, or location of any improvement on the Land;
        iii. the subdivision of land; or
        iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, or regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
        Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2.  Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by You;
    b.  not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
    c.  resulting in no loss or damage to You;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
    e.  resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
    b.  in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
    Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5.  The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6.  Any claim, by reason of the operation of **federal bankruptcy, state insolvency, or similar creditors' rights law**, that the transfer of the Title to You is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 30.
7.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8.  Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9.  Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

LIMITATIONS ON COVERED RISKS

**Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:**
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown on Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown on Schedule A or $2,500 (whichever is less) | $5,000 |

*First American Title*

Order Number: 7255546
Page Number: 12

ALTA OWNER'S POLICY [(07-01-2021) V. 01.00]
CLTA STANDARD COVERAGE OWNER'S POLICY [(02-04-22) V. 01.00]
EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.   the occupancy, use, or enjoyment of the Land;
        ii.  the character, dimensions, or location of any improvement on the Land;
        iii. the subdivision of land; or
        iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as numbers 1 through 7.  The 2021 CLTA Standard Coverage Owner's Policy will include the Western Regional Standard Coverage Exceptions listed below as numbers 1 through 7.

EXCEPTIONS FROM COVERAGE

Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas,

*First American Title*
Page 12 of 13

uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)    the occupancy, use, or enjoyment of the Land;
    (ii)   the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)   environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided  under Covered Risk 6.
2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as numbers 1 through 7.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a)  Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

U.S. Bank Tower, 633 West 5th Street, Suite 2600, Los Angeles, CA 9007

A true and correct copy of the foregoing document entitled (*specify*):
**MOTION FOR ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS (EXCEPT L.A. COUNTY HERO LIEN), SUBJECT TO OVERBID, AND APPROVING SURCHARGE FOR ADMINISTRATIVE FEES AND EXPENSES PER 11 U.S.C. §506(c); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 25, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee: United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov
Trustee: Nancy Zamora, zamora3@aol.com, nzamora@ecf.axosfs.com
Counsel for Debtor: Anita Khachikyan, ak@khachlaw.com
Counsel for Creditors': Raymond H. Aver ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com, katya@averlaw.com, jesus@averlaw.com; Sanaz Sarah Bereliani, berelianilaw@gmail.com, chris@berelianilaw.com, r48595@notify.bestcase.com; Shannon A. Doyle, sdoyle@ghidottiberger.com, bknotifications@ghidottiberger.com; Bruce P. Needleman, attybpn@aol.com; Elan S. Levey, elan.levey@usdoj.gov, julie.morales@usdoj.gov, caseview.ecf@usdoj.gov, usacac.tax@usdoj.gov
Counsel for Defendant Vanecian: Michael G. D'Alba, mgd@lnbyg.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On June 25, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Hovhannes Nazaryan, 24366 La Masina Court, Calabasas, CA  91302
Defendant: Artur Nazaryan Register No. 87448-509, USP Atwater, U.S. Penitentiary, P.O. Box 019001, Atwater, CA 95301
Special Counsel:  Brad S. Sures, Esq., Law Office of Brad S. Sures, 10803 Gloria Ave, Granada Hills, CA 91344
Trustee's Broker: Behnaz Tavakoli, The One Luxury Properties, 5000 N. Parkway Calabasas Ste:100 Calabasas CA 91302
Proposed Buyer: Avi Matatiaho & Minoo Kahen, c/o David Randal Smith, Keller Williams Calabasas, 23975 Park Sorrento, Suite 110, Calabasas, CA  91302
Escrow: Mihee Chir, Mission Escrow, 15910 Ventura Blvd., #1160, Encino, CA  91436
Title: Rich Miehl, Mina Chin, First American Title Company, 330 N. Brand Blvd., #1150, Glendale, CA  91203
Trustee's CPA: Samuel R. Biggs, CPA, SLBIGGS, A Division of SingerLewak, 10960 Wilshire Blvd., Suite 1100, Los Angeles, CA 90024
U.S Trustee: Eryk Escobar, Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA  90017
Judge: The Honorable Martin Barash, U.S. Bankruptcy Court, 21041 Burbank Boulevard, Suite 342, Woodland Hills, CA 91367
Lienholders: LA County HERO, Program Manager, 1100 N. Eastern Avenue, #200, Los Angeles, CA 90063; County of Los Angeles, LA HERO, P.O. BOX 31001-2920, Pasadena, CA 91110-2920; Los Angeles County Tax Collector, P. O. Box 54110,  Los Angeles, CA 90054-0110; AmWest Funding Corp., 6 Pointe Dr., Ste 300, Brea CA 92821; LAPFCU c/o, Law Offices Of Bruce P. Needleman, 21250 Califa Street, Suite 201, Woodland Hills, CA 91367; U.S. Attorney's Office, Asset Forfeiture And Recovery Section, 312 N. Spring Street, 11th Floor, Los Angeles, CA  90012; Civil Process Clerk , United States Attorney's Office,  Federal Building, Room 7516,  300 North Los Angeles Street, Los Angeles, CA 9001; Attorney General, United States Department of Justice,  Ben Franklin Station, P. O. Box 683 Washington, DC 20044; Vista Pointe Homeowners Association c/o, Ross Morgan & Co., 15315 Magnolia Blvd., #212, Sherman Oaks, CA 91403; Mehran Javaherian, 203 S. Willaman Drive, Beverly Hills, CA 90211; Calabasas Park Homeowners Association, P.O. Box 8426, Calabasas, CA  91372

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 25, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 25, 2025 | Cynthia Casas | /s/ Cynthia Casas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**