RAYMOND H. AVER - SBN 109577
LAW OFFICES OF RAYMOND H. AVER
A Professional Corporation
11849 West Olympic Boulevard, Suite 204
Los Angeles, California 90064
Telephone: (310) 571-3511
email: ray@averlaw.com

Bankruptcy Counsel for
MEHRAN JAVAHERIAN
Secured Creditor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA [SAN FERNANDO VALLEY DIVISION]

|  |  |
|---|---|
| In re:<br><br>HOVANNES NAZARYAN,<br><br>        Debtor. | Case No. 1:25-bk-10617-MB<br><br>Chapter 7<br><br>OPPOSITION TO "MOTION FOR ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS (EXCEPT L.A. COUNTY HERO LIEN), SUBJECT TO OVERBID, AND APPROVING SURCHARGE FOR ADMINISTRATIVE FEES AND EXPENSES PER 11 U.S.C. §506(c)" MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION(S) AND  EXHIBIT(S) IN SUPPORT THEREOF<br><br><br>Date:  July 16, 2025<br>Time:  10:00 a.m.<br>Place: Courtroom 303<br>  United States Bankruptcy Court<br>  21041 Burbank Boulevard<br>  Woodland Hills, California 91367 |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE:**

Mehran Javaherian, a secured creditor of Hovannes Nazaryan ("Debtor"), submits this opposition ("Opposition") to the "Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens and Interests (Except L.A. County HERO Lien), Subject to Overbid, and Approving Surcharge for Administrative Fees and Expenses Per 11 U.S.C. §506(c)'" ("Sale & Surcharge Motion"), filed by Nancy Hoffmeier Zamora, the chapter 7 trustee of the estate of Hovannes Nazaryan ("Trustee") on June 25, 2025 [Docket #63].

This Opposition to the sale is based upon the following alternative grounds:

a.  the Trustee has not cited to any California statute identifying a legal or equitable proceeding that would permit a court to compel Mehran Javaherian to suffer a sale of his collateral in return for a portion of the indebtedness owing to him, or to compel the United States to suffer a sale without any return; or

b.  the Trustee is unable to show that the proposed sale of the over encumbered property will result in a meaningful distribution to unsecured creditors, which is necessary to invoke the exception to the general rule that a sale of fully encumbered property is prohibited.

The Opposition to the surcharge request is that the Trustee is unable to demonstrate that the administrative expenses sought to be paid from the proceeds of secured collateral were incurred for the benefit of the secured creditors and the secured creditors have not caused or consented to the expenses.

**WHEREFORE,** Mehran Javaherian requests that the Court deny the Sale & Surcharge Motion and instead grant the pending "Motion For Relief From The Automatic Stay Under 11 U.S.C. §362 (REAL PROPERTY)," filed by Mehran Javaherian, the continued hearing of which is scheduled for the same date as the hearing of the Sale & Surcharge Motion.

Dated: July 2, 2025                    LAW OFFICES OF RAYMOND H. AVER
                                       A Professional Corporation


                                       By: /s/ raymond h aver
                                           RAYMOND H. AVER
                                       Bankruptcy Counsel for
                                       MEHRAN JAVAHERIAN
                                       Secured Creditor

Law Offices
of Raymond
H. Aver, APC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PERTINENT BACKGROUND FACTS

A.   The Javaherian Loan And The Lien Claims Against The La Masina Court Property Collateral

Mehran Javaherian made a loan in the principal amount of $1.2 million to Artur Nazaryan and Hovannes Nazaryan ("Debtor") on or about July 10, 2023.  Payment of the loan is secured by the residential real property located at 24366 La Masina Court, Calabasas, California 91302 ("La Masina Court Property") under a second priority deed of trust.  The La Masina Court is encumbered by consensual and non consensual liens exceeding $6,443,191, and consisting of:

$97,528 - real estate taxes assesed by and owing to Los Angeles County Tax Collector;

$184,750 - Home Energy Renovation Opportunity ("HERO") lien;

$3,064,520 - senior deed of trust lien in favor of AmWest Funding Corp. ("AmWest");

$128,382 - judgment lien in favor of Los Angeles Police Federal Credit Union ("LAPFCU");

$1,678,646 - junior deed of trust lien in favor of Mehran Javaherian; and

$1,289,365 - restitution judgment lien in favor of United States of America ("U.S.") (against Debtor's property).

B.   The Bankruptcy Filing

Debtor filed a voluntary petition for relief under chapter 7 on

April 14, 2025 ("Petition Date").  It is apparent from a review of the bankruptcy schedules, filed with the petition, that the La Masina Court Property was over encumbered by consensual liens alone as of the Petition Date.[1]

Nancy Hoffmeier Zamora ("Trustee") was thereafter appointed as the estate representative.

Despite the apparent lack of equity in the La Masina Court Property, Trustee filed a Notice Of Assets [Docket #6], on April 15, 2025, one day after the Petition Date.  The Notice Of Assets provides that proofs of claim are due by July 21, 2025, and government proofs of claim are due by October 14, 2025.[2]

On April 22, 2025, Debtor caused to be filed a motion to compel Trustee to abandon the La Masina Court Property ("Abandonment Motion"). [Docket #14]  The Abandonment Motion confirms that the La Masina Court Property is substantially over encumbered.

13.  There is about $7,002,748.06 in secured liens on the property which exceeds the current market value of the property. As a result, the estate holds no equity in the property.

14.  The fair market value of the property, based on online comparatives, recent estimates, is valued at approximately $4,500,000 to $4,700,000. This amount is minimal in relation to the overall size of the estate and does not present a meaningful opportunity for distribution to unsecured creditors.

[Abandonment Motion, p. 2]

Despite the apparent lack of equity in the La Masina Court

---

[1]  Debtor valued the La Masina Court Property at $2.8 million in Schedule A/B and listed the principal amount of the consensual secured claims at $4.2 million in Schedule D. [See, Bankruptcy Schedules, Docket #1, pp. 11/63 and 18-19/63] Thus based on the Schedules, the La Masina Court Property was over encumbered on the Petition Date.

[2]  Although the non government claims bar date is more than two weeks, four general unsecured proofs of claim, aggregating $23,925.99 and one priority unsecured/general unsecured proof of claim, totaling $26,505.48, have already been filed.

Property, Trustee filed opposition on April 28, 2025. [Docket #21] By the opposition, the Trustee argued that the La Masina Court Property has value for, and is not a burden to, the debtor estate. In her declaration in support of the opposition, the Trustee stated:

> 11.   I am communicating with counsel for Senior Lienholder, Second TD Holder, and Junior Lienholder regarding their cooperation with, and approval of, my marketing and sale of the Real Property and negotiating voluntary reductions in payoff demands and "carveouts" for the Estate.  I also intend to communicate with First TD Holder regarding marketing and sale of the Real Property.
>
> 18.   My business judgment is that the marketing and sale of the Real Property will provide the funds from the negotiated carveouts for the benefit of the Estate and the holders of allowed, unsecured claims.

[Opposistion, pp. 13-14]

On May 11, 2025, Mehran Javaherian caused a "Statement Of Position Of Secured Creditor Regarding Debtor's Motion To Compel Abandonment Of Real Property" to be filed [Docket #25], listing the debt against the La Masina Court Property, demonstrating that the estate had no equity in the La Masina Court Property, stating that his lien against the La Masina Court Property was not adequately protected, and alerting the Court and all parties that Mehran Javaherian, among other things, did not consent to a Section 506(c) surcharge in favor of the Trustee or any third party from the La Masina Court Property.[3]

On May 27, 2025, Mehran Javaherian filed the "Motion For Relief From The Automatic Stay (REAL PROPERTY)" ("Stay Relief Motion"). [Docket #37]  By the Stay Relief Motion, Mehran Javaherian

_____

[3]   Toward the conclusion of the hearing of the Abandonment Motion, held on May 13, 2025, the Court continued the hearing to July 16, 2025.

demonstrated that his junior deed of trust lien, was being eroded by the continuing assessment of real property taxes and the continuing accrual of interest to the senior deed of trust lien holder and was therefore not adequately protected.  Mehran Javaherian also demonstrated that Debtor did not have an equity in the La Masina Court Property and that the La Masina Court Property could not be necessary to Debtor's effective reorganization as Debtor was proceeding under chapter 7.[4]

On June 4, 2025, Mehran Javaherian offered, in a letter written by his bankruptcy counsel, to satisfy the judgment lien from the LAPFCU for the full amount of the lien and requested a payoff from LAPFCU's counsel.  However, to date, the payoff information has yet to be provided.

On June 6, 2025, Trustee filed opposition [Docket #52] to the "Motion For Relief From The Automatic Stay (REAL PROPERTY)." [Docket #37]  Although Trustee argued that Mehran Javaherian did not have grounds for relief from the automatic stay to foreclose on the La Masina Court Property, her real agenda was to obtain a continuance of the Stay Relief Motion so that she could seek to sell the property.

16.  Trustee is preparing the Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens and Interests, Subject to Overbid, and Surcharging Lienholders for Administrative Fees and Expenses Per 11 U.S.C. §506(c) (the "Sale Motion").  The Sale Motion will seek the Court's order approving Trustee's sale of the Real Property, free and clear of any interests and liens pursuant to 11 U.S.C. §§363(b), (f), (h) and (m), and on an "AS-IS, WHERE-IS" basis, to Buyer for the Sales Price or to the highest qualified bidder ("Highest Bidder") for the highest bid (the "Highest Bid") pursuant to the overbid procedure described in the Sale Motion.

---

[4]    Toward the conclusion of the hearing of the Stay Relief Motion, held on June 17, 2025, the Court continued the hearing to July 16, 2025.

[Opposition, p. 7]

On June 25, 2025, Trustee filed the "Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens and Interests (Except L.A. County HERO Lien), Subject to Overbid, and Approving Surcharge for Administrative Fees and Expenses Per 11 U.S.C. §506(c)'" ("Sale & Surcharge Motion") [Docket #63].  In the Sale & Surcharge Motion, the Trustee reveals that she immediately as of the Petition Date investigated the value of the La Masina Court Property with assistance of a real estate broker and obtained and analyzed real property and other documents[5] [Sale & Surcharge Motion, pp. 17/88:27-89:13]  Despite the patently apparent lack of equity in the La Masina Court Property, and instead of promptly abandoning the La Masina Court Property, or at least not opposing the Abandonment Motion, Trustee started incurring expenses and retaining professionals without having any estate funds to pay for them.

Based upon a $4,675,000 value of the La Masina Court Property, and according to the Updated Seller's Estimated Settlement Statement, attached as Exhibit C to the Sale & Surcharge Motion, Mehran Javaherian would have a deficiency claim of approximately $527,594.09 if he received $1,121,051.51 from the Trustee's contemplated sale of the La Masina Court Property.

The United States of America has a restitution judgment lien claim in the amount of $1,289,364.94, which is wholly unsecured.

Based upon the proofs of claim filed to date, and the claim of the United States of America and the deficiency claim of Mehran

---

[5]    Assuming the Trustee competently exercised her duties as the chapter 7 trustee, she must have reviewed a title report for the La Masina Court Property.

Law Offices
of Raymond
H. Aver, APC

Javaherian, the unsecured debt of the estate is approximately $1,867,390.40, resulting in a distribution to unsecured creditors of slightly more than two percent (2%), which could hardly be characterized as "meaningful" for purposes of determining whether to invoke the exception to the general rule that a sale of fully encumbered property is prohibited.

## II.   LEGAL ANALYSIS

A.    The Bankruptcy Code Does Not Authorize The Sale Of The La Masina Court Property Free And Clear Of Mehran Javaherian's Deed Of Trust Lien Or The U.S. Restitution Lien Under 11 U.S.C. §363(f)

Section 363(f) provides that a debtor in possession may sell property free and clear of "any interest" in the property of any entity other than the estate, only if:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

By the sale motion, the Trustee contends that Mehran Javaherian "could be compelled to accept a monetary satisfaction" of less than the full amount of his claim based upon Section 363(f)(5), implicitly conceding that the first four subsections are not applicable. [Motion, p. 32/88:8-10]

The controlling authority in the Ninth Circuit is *Clear Channel*

Law Offices
of Raymond
H. Aver, APC

*Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (BAP 9th Cir. 2008). In *Clear Channel*, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") reversed the bankruptcy court's order that held that, under §363(f)(5), the sale was free and clear of Clear Channel's lien. [*Id.* at 47] In making its determination, the BAP construed Section 363(f)(5) as referring to a "legal and equitable proceeding in which the non-debtor could be compelled to take less than the value of the claim secured by the interest." [*Id.* at 42] The BAP stated the question as being whether there is an available type or form of legal or equitable proceeding in which a court could compel Clear Channel to release its lien for payment of an amount that was less than full value of Clear Channel's claim. Neither the trustee nor [the creditor] has directed us to any such proceeding under non-bankruptcy law, and the bankruptcy court made no such finding. *Clear Channel*, at 45-46.

Similarly, in the instant case, the Trustee does not cite to any California statute identifying a legal or equitable proceeding that would permit a court to compel Mehran Javaherian to suffer the sale of his collateral in return for a portion of the indebtedness owing to him, or the United States to suffer the sale of its collateral without any return. It therefore follows that on the record before the Court, the Trustee has not demonstrated that the requirements necessary to invoke Section 363(f)(5) have been satisfied.

The Trustee simply contends that "in a hypothetical judicial or non-judicial foreclosure sale under California state law, or pursuant to a tax lien sale under applicable state or federal law, [Mehran Javaherian] could be compelled to accept a money satisfaction for the Second TD." [Motion, pp. 31/88:27-28 - 32/88:1-3] However, for the

Court to so conclude, the Trustee would need to cite to a California statute providing that a creditor could be compelled to accept a money satisfaction of its interests.

In an effort to try and convince the Court that the requirements of Section 363(f)(5) have been satisfied, the Trustee cites to *In re Jolan,* 403 B.R. 866 (Bank. W.D. Wash. 2009), *In re Boston Generating, LLC,* 440 B.R. 302 (Bankr. S.D. N.Y. 2010), and to *In re Hassan Imps. P'ship*, 502 B.R. 851 (C.D. Cal. 2013).  In *Jolan*, the trustee moved for authority to sell personal property, restaurant and bar equipment and a trademark.  Among the creditors asserting a lien against the personal property was the Internal Revenue Service.  Relying solely on Washington state law, the bankruptcy court concluded that "because there are in Washington legal and equitable proceedings by which junior lienholders may be compelled to accept money satisfactions, *§363(f)(5)* here [in this case] permits a sale free and clear of liens, with the liens attaching to the proceeds, notwithstanding that those proceeds may be insufficient to pay all liens." (bracketed language added.) [*In re Jolan*, 430 B.R. at 870]  Specifically, the *Jolan* court cited to Washington's Uniform Commercial Code, RCW 62A.9A, pertaining to a senior secured party's disposition of personal property collateral after default.

Following *Jolan,* the bankruptcy court in *In re Kabuto Ariz. Props., LLC,* 2009 Bankr. LEXIS 4961 (Bankr. D. Ariz. 2009), granted a chapter 11 debtor's motion to sell free and clear of liens concluding that a creditor could be compelled to accept a money satisfaction of its interests under Arizona law, which expressly provides that the disposition of collateral by a secured party discharges the security interest of a junior lien holder and which is identical to Washington

law.

　　In the event that any Other Debtor Secured Creditor refuses to consent to the Sale, the Debtor intends to request that this Court approve the Sale of the Other Assets in which such creditor claims an Interest free of such Interest pursuant to § 363(f)(4) and/or (5). The Debtor can satisfy the requirements of § 363(f)(5) because the Other Debtor Secured Creditors can be compelled to accept a money satisfaction of their interests in legal or equitable proceedings. Such legal or equitable proceedings include proceedings pursuant to A.R.S. § 47-9617, which provides that the disposition of collateral by a secured party "discharges the security interest under which the disposition is made." *Id.* See In re Jolan, Inc., 403 B.R. 866, 869 (Bankr. W.D. Wash 2009) (discussing *Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*), 391 B.R. 25 (9th Cir. BAP 2008) and holding that a creditor could be compelled to accept a money satisfaction of its interests under Washington Commercial Code provision 9A-617, which is identical to A.R.S. § 47-9617).

In *Boston Generating*, the United States Bankruptcy Court for the Southern District of New York, a case outside the Ninth Circuit, declined to follow *Clear Channel*. Finding that under New York law, a junior lienholder (either in a foreclosure of real property, citing to N.Y. Real Prop. Acts, Art. 13, or of collateral under the Uniform Commercial Code, citing to N.Y. U.C.C. §§ 9-608, 9-615) is entitled to nothing more than the surplus cash generated in a sale, the *Boston Generating* court concluded that Section 363(f)(5) was satisfied.

*Hassan* involved a chapter 7 trustee's motion to sell real property free and clear of several covenants and contract interests governing the use of the property. The United States District Court for the Central District of California on appeal from the bankruptcy court reversed the sale order concluding that the trustee had not "identified a 'legal or equitable proceeding' that would 'compel[]' the City to 'accept a money satisfaction' of the equitable servitude by the Operating Covenant." While the court in *Hassan* seemed to accept the bankruptcy court's conclusion that a foreclosure of a senior lien was a qualifying legal or equitable proceeding, it did

Law Offices
of Raymond
H. Aver, APC

not rely on this conclusion in reaching its determination and there is no citation to any California statute by which a trust deed lien holder could be compelled to accept a money satisfaction.

In an unpublished decision from the United States Bankruptcy Court for the District of Oregon, *In re Pioneer Village Investments, LLC*, Case No. 2010-62852-fra11, the Court denied a debtor in possession's motion to sell real property free and clear of the lien of the deed of trust lien holder, Premier West Bank, pursuant to Section 363(f)(5). The chapter 11 debtor proposed to sell a portion of its real property, to retain approximately $160,000 of the net proceeds and pay the balance to the county for property taxes and then to the secured creditor. Citing to *Clear Channel*, the court in *Pioneer Village Investments* denied the motion because "[t]he debtor-in-possession does not point to any proceeding recognized under Oregon law that would permit a court to compel Premier West Bank to suffer the sale of a portion of its collateral in return for a portion of the purchase price obtained by the sale, and I am not aware of any. It follows that I cannot find, on the record before me, that Code § 363(f) has been satisfied." Although unpublished, a copy of the Memorandum Opinion in *Pioneer Village Investments* is attached.

In the instant case, the Trustee has not provided any evidence of the recordation of a federal tax lien against the La Masina Court Property. Nor has the Trustee cited to any California statutes designating an available type or form of legal or equitable proceeding in which a court could compel Mehran Javaherian to release his lien for payment of an amount that is less than full value of his lien, or the United States to release its lien without receiving any

payment whatsoever.

B.    The Trustee Is Unable To Invoke The Limited Exception Of A Meaningful Distribution To Unsecured Creditors To The General Rule Prohibiting The Sale Of Over Encumbered Estate Property

In support of her efforts to sell the La Masina Court Property, the Trustee argues that she has a fiduciary duty to administer an over encumbered asset based upon a paltry $78,000 carve out of which she intends to set aside $40,000 for allowed unsecured claims. Neither the leading case, *In re KVN Corp.*, 514 B.R. 1 (9th Cir. BAP 2014) nor the Handbook For Chapter 7 Trustees ("Trustee Handbook") support the Trustee's assertions.  In *KVN Corp.*, the bank which appears from the opinion to be the sole secured creditor (thus distinguishing the case from the instant case) contacted the chapter 7 trustee and requested her assistance in selling some firearms that collateralized the debt to the bank.  The bankruptcy court denied the stipulation between the bank and the trustee to sell the firearms even though the bank agreed to split the net sale proceeds with the trustee.  The Bankruptcy Appellate Panel ("BAP") vacated the denial and remanded for the bankruptcy court to make factual findings regarding whether the lien proceeds would result in a meaningful distribution to unsecured creditors.

In reaching its conclusion the BAP, at pages 5-9, noted the general rule is that the sale of fully encumbered property is prohibited.

It is universally recognized ... that the sale of a fully encumbered asset is generally prohibited. [Citations omitted.]

The prohibition against the sale of fully encumbered property is also embedded in the official Handbook for Chapter 7 Trustees in several places:

Law Offices
of Raymond
H. Aver, APC

> Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest.

U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees at 4-16 (2012) (hereinafter, Handbook). The Handbook also provides:

> A chapter 7 case must be administered to maximize and expedite dividends to creditors. A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

Id. at 4-1. Finally,

> [i]n asset cases, when the property is fully encumbered and of nominal value to the estate, the trustee must immediately abandon the asset and contact the secured creditor immediately so that the secured creditor can obtain insurance or otherwise protect its own interest in the property. [§§] 554, 704.

Id. at 4-7. Taken together, the above-referenced authorities stand for the proposition that sales of fully encumbered assets are generally improper. In that instance, the trustee's proper function is to abandon the property, not administer it, because the sale would yield no benefit to unsecured creditors.

The BAP went on to state, at page 10, that there is, however, no per se rule that bans carve-out agreements as long as the sale will result in a meaningful distribution to creditors.

> Despite the general rule prohibiting the sale of fully encumbered property, chapter 7 trustees may seek to justify the sale through a negotiated carve-out agreement with the secured creditor. A carve-out agreement is generally understood to be "an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position." [Citations omitted.]

The Handbook also provides some guidance on carve-out agreements in the context of a sale:

Law Offices
of Raymond
H. Aver, APC

> A trustee may sell assets only if the sale will result in a meaningful distribution to creditors. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset and whether the value of the asset exceeds the liens. The trustee may seek a 'carve-out' from a secured creditor and sell the property at issue if the 'carve-out' will result in a meaningful distribution to creditors ... . If the sale will not result in a meaningful distribution to creditors, the trustee must abandon the asset.

Handbook at 4-14.

In the instant case, the sale contemplated by Trustee will not result in a meaningful distribution to creditors. As noted above, assuming *arguendo* the La Masina Court Property could be sold over of the objection of Mehran Javaherian, the $40,000 set aside projected by Trustee for unsecured creditors would not result in a meaningful distribution (roughly 2%) to an unsecured creditor body of more than $1.5 million. The approximately $38,000 balance of the carve out will almost assuredly not cover the administrative claims, and even if it would chapter 7 trustee's are not permitted to sell assets in an effort to primarily benefit the trustee and/or the other professionals.

Unlike the situation in *KVN Corp.*, where there was one secured creditor which contacted the trustee and requested her assistance in selling the property, thus consenting to a sale under Section 363(f), there are multiple secured creditors, including Mehran Javaherian, and he will not consent to Trustee's proposed sale.

Moreover, as previously stated in his declaration in reply to the Trustee's Stay Relief Motion opposition, Mehran Javaherian has offered to satisfy the LAPFCU judgment lien and is awaiting a payoff. If that judgment lien is satisfied there would not be any carve out for unsecured creditors. Additionally, Mehran Javaherian is prepared

to transfer $40,000 to Debtor's bankruptcy estate for payment to unsecured creditors if his stay relief motion is granted. Thus even if the Court were to conclude that $40,000 would constitute a meaningful distribution, the payment by Mehran Javaherian will ensure that the estate receives the benefit of the proposed carve out amount.

C.   The Bankruptcy Court Should Deny Or Strictly Limit The Administrative Fees And Expenses Sought To Be Recovered By The Chapter 7 Trustee Under 11 U.S.C. §506(c)

The Trustee seeks to surcharge the La Masina Court Property for administrative fees and expenses. In addition to payment for insurance, pool service, repairs, a locksmith, gardening, hauling and cleanup services, utility services and "other costs advanced by the Trustee, the administrative fees consist of Special Counsel fees of unlawful detainer counsel, Estate Accountant fees, Trustee fees, and a "hold-back" in the aggregate amount of at least $50,000 from the payment otherwise due Mehran Javaherian. [Motion pp. 13/88:14 - 14/88:5]

The Trustee states that Mehran Javaherian has not agreed to any surcharge. Such a statement does not nearly go far enough as the Trustee never sought Mehran Javaherian's consent or agreement to any surcharge, and Mehran Javaherian has consistently objected to any attempt by the Trustee to surcharge the La Masina Court Property. The Trustee also states that AmWest Funding Corp. has not objected to any surcharge. However, the Trustee does not disclose whether she sought AmWest Funding's consent or agreement. In the context of this chapter 7 case, lack of objection should not be deemed to constitute implied consent.

The general rule is that, absent an express agreement to the contrary, the expenses associated with administering a bankruptcy estate are not chargeable to a secured creditor's collateral or claim, but must be borne out of the unencumbered assets of the estate. [4 *Collier on Bankruptcy* ¶506.05 (16th ed. 2025)]  One exception to this general rule is stated in section 506(c), which permits a trustee to recover administrative expenses from a secured creditor's collateral if three conditions are satisfied:

(I) the expenses are "necessary" to preserve or dispose of the collateral,

(ii) they are "reasonable," and

(iii) the incurrence of the expenses provided a "benefit" to the secured creditor.

Section 506(c) should not be construed as a broad authorization to charge a secured creditor's collateral with an estate's administrative expenses.  Rather, only those expenses that preserve, or are incurred in disposing of, the relevant collateral fall within the purview of section 506(c), and then **only to the extent** that they are necessary and provide a benefit to the secured party. [*In re Cascade Hydraulics & Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir. 1987) (Payment of administrative expenses from the proceeds of secured collateral are allowed when incurred **primarily for the benefit of the secured creditor** or when the secured creditor caused or consented to the expense (citation omitted; emphasis added.)

The party seeking the recovery of an expense under section 506(c) bears the burden of proof. [*Id.*]  "To satisfy the benefit test of section 506©, Cascade must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral. ...

Law Offices
of Raymond
H. Aver, APC

Cascade's recovery, however, is limited to the extent that the secured creditor benefitted from the services... . Section 506© is not intended as a substitute for the recovery of administrative expenses normally the responsibility of the debtor's estate." (citations omitted.) [*Id.*]

In the instant case, assuming *arguendo* the Sale Motion is granted, the Trustee will be unable to meet her burden of demonstrating that the administrative expenses were necessary and were provided to benefit Mehran Javaherian's junior lien against the La Masina Court Property. Mehran Javaherian was in a position to cause the La Masina Court Property to be sold at foreclosure sale and such sale would have been held had Debtor not filed for bankruptcy relief two days prior to the scheduled sale. The Trustee chose to administer the La Masina Court Property despite patent, readily available evidence that the property was substantially over encumbered. The Trustee took a gamble that she could generate sufficient sums to provide for a meaningful distribution to unsecured creditors by convincing the secured creditors to agree to a carve out of their lien claims. The Trustee's efforts have failed and she should not be authorized to surcharge Mehran Javaherian's collateral for incurring administrative expenses although it was apparent from the outset that there were no estate funds available to pay for such expenses.

## III.   CONCLUSION

By the instant Sale & Surcharge Motion, the Trustee is seeking Court authorization to sell over encumbered property that is the subject of a preexisting and pending stay relief motion. As

demonstrated in these points and authorities, and assuming the La Masina Court Property could be sold over of the objection of Mehran Javaherian, the $40,000 set aside projected by Trustee for unsecured creditors would not result in a meaningful distribution.  Therefore, based upon the facts and circumstances of this case and the authorities cited above, Mehran Javaherian requests that the Court deny the Sale & Surcharge Motion.  Mehran Javaherian further requests that the Court grant his pending Stay Relief Motion.

Dated: July 2, 2025         LAW OFFICES OF RAYMOND H. AVER
                            A Professional Corporation


                            By: /s/ raymond h aver
                                RAYMOND H. AVER
                            Bankruptcy Counsel for
                            MEHRAN JAVAHERIAN
                            Secured Creditor

DISTRICT OF OREGON

**F I L E D**

**December 03, 2010**

**Clerk, U.S. Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

IN RE                                                     )          Bankruptcy Case
                                                          )          No. 10-62852-fra11
PIONEER VILLAGE INVESTMENTS, LLC,   )
                                                          )          MEMORANDUM OPINION[1]
                                          Debtor.      )

Pioneer Village Investments, LLC, seeks leave of the Court to sell a portion of its real property in Jackson County, Oregon, free and clear of the liens of creditors, specifically the trust deed of creditor Premier West Bank. Premier West has objected on several grounds. I find that the motion for leave to sell the described property must be denied.

## I. BACKGROUND

The debtor-in-possession operates a facility in the city of Jacksonville, Oregon, providing for "independent living' facilities for elderly residents, assisted living for residents who are less able to care for themselves, and other facilities designed to accommodate the needs of elderly residents. A portion of the facility is dedicated to eleven independent-living "cottages." The debtor-in-possession seeks to sell the independent living cottages to Vintage Hotels, Inc., for a gross sale price of $1,880,000. In its motion the debtor-in-possession states that it "believes that a total of $400,000 need not be paid as secured claims

// // //

---

[1]     This decision is not intended for publication.

Page 1 – MEMORANDUM OPINION

Case 10-62852-fra11 Doc 110 Filed 12/03/10

(because the lien is invalid, avoidable, etc., the lien holder consents to less than full payment, or part or all of the underlying debt is not allowable).[2]

Premier West Bank has a claim for $13,549,490.43 plus post-petition interest, secured by a deed of trust against all of the debtor-in-possession's real property. The deed of trust describes four separate parcels, but neither the deed of trust nor the debtor-in-possession's motion compare the property to be sold, which is described by street address, and the four parcels described in the trust deed, which are described in metes and bounds.

It appears from the motion that the debtor-in-possession's intention is to sell the described portion of its property, retain approximately $160,000 of the net proceeds, and pay the balance to the county for property taxes, and then to Premier West. It is suggested, although there is no evidence on this point, that the remaining property is sufficient to secure the balance of Premier West's loan.

Premier West objects on several grounds, including:

(1) The sale is a component of a sub-rosa reorganization, which should be accomplished through the plan and confirmation procedures set out in Chapter 11 of the Code;

(2) The sale does not qualify under § 363(f)(5);

(3) The sale violates local zoning restrictions.

## II. DISCUSSION

A. *The proposed sale does not qualify under Code § 363(f)(5).*

Code § 363(f) provides that a debtor-in-possession may sell property free and clear of "any interest" in the property of any entity other than the estate, only if:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2) such entity consents;

// // //

---

[2] Apart from the dollar figures, the quoted language from the motion is part of the boilerplate included in the Court's form notice of intent to sell real estate, Local Bankruptcy Form 760.5.

Page 2 – MEMORANDUM OPINION

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in *bona fide* dispute;  or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The motion before me states that the debtor-in-possession relies on subsection (5), implicitly conceding that the first four subsections are not applicable.  Subsection (5) has been construed by the Bankruptcy Appellate Panel for the Ninth Circuit as referring to a "legal and equitable proceeding in which the non-debtor could be compelled to take less than the value of the claim secured by the interest." Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 42 (9th Cir. BAP 2008).

In Clear Channel the BAP stated that

> The question is thus whether there is an available type or form of legal or equitable proceeding in which a court could compel Clear Channel to release its lien for payment of an amount that was less than full value of Clear Channel's claim.  Neither the trustee nor [the creditor] has directed us to any such proceeding under non-bankruptcy law, and the bankruptcy court made no such finding.

Clear Channel, at 45-46.

The debtor-in-possession does not point to any proceeding recognized under Oregon law that would permit a court to compel Premier West Bank to suffer the sale of a portion of its collateral in return for a portion of the purchase price obtained by the sale, and I am not aware of any.  It follows that I cannot find, on the record before me, that Code § 363(f) has been satisfied.

B. *Zoning restrictions*

Declarations in support of Premier West's objection establish that the subject property is subject to a covenant granted to the City of Jacksonville that separate parcels of the planned unit development approved for the property will not be sold until appropriate covenants, conditions, and restrictions are promulgated and recorded.  This has not been done, and it follows that the proposed sale would constitute an unlawful violation of local zoning ordinances.  Debtors-in-possession are subject to such restrictions, and the Court cannot authorize their violation.  See, 28 U.S.C. § 959; In re St. Mary Hosp., 86 B.R. 393, 398 (Bankr. E.D. Pa. 1988).

Page 3 –  MEMORANDUM OPINION

## III. CONCLUSION

Given the foregoing findings, I need not determine whether the sale should be denied because it supplants the confirmation process. See e.g., In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983). However, it should be noted that there are now before the Court plans submitted by both the debtor-in-possession and Premier West Bank. The issues raised by the debtor-in-possession's attempt at a partial liquidation to raise funds necessary to pay administrative expenses should be determined in the context of confirmation of a plan, rather than piecemeal sale of assets.

The foregoing constitutes my findings of fact and conclusions of law. A separate order has been entered denying the motion.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

Page 4 – MEMORANDUM OPINION

## DECLARATION OF MEHRAN JAVAHERIAN

I, MEHRAN JAVAHERIAN, declare:

1.    I am the junior deed of trust lien holder against the real property located at 24366 La Masina Court, Calabasas, California 91302 ("La Masina Court Property").

2.    The La Masina Court Property is encumbered by consensual and non consensual liens exceeding $6,443,191, consisting of:

$97,528 - real estate taxes assessed by and owing to Los Angeles County Tax Collector;

$184,750 - Home Energy Renovation Opportunity ("HERO") lien;

$3,064,520 - senior deed of trust lien in favor of AmWest Funding Corp. ("AmWest");

$128,382 - judgment lien in favor of Los Angeles Police Federal Credit Union ("LAPFCU");

$1,678,646 - junior deed of trust lien in favor of Mehran Javaherian; and

$1,289,365 - restitution judgment lien in favor of United States of America ("U.S.").

3.    Hovannes Nazaryan filed for bankruptcy relief on April 14, 2025.

4.    I had commenced non judicial foreclosure proceedings against the La Masina Court Property on December 5, 2024, by causing a Notice Of Default to be recorded.  The La Masina Court Property was scheduled for foreclosure sale on April 16, 2025, but was stayed by the bankruptcy filing.

5.    On May 27, 2025, I caused to be filed the "Motion For Relief From The Automatic Stay (REAL PROPERTY)" ("Stay Relief

Law Offices
of Raymond
H. Aver, APC

Motion"), the hearing of which has been continued to the same date as the Trustee's sale motion. I submitted a declaration in support of the Stay Relief Motion, a true and correct copy of which is attached as **Exhibit A** hereto, and reaffirm that declaration.

6. I have offered to satisfy the judgment lien from the Los Angeles Police Federal Credit Union ("LAPFCU") for the full amount of the lien and have requested a payoff from LAPFCU's counsel, Bruce P. Needleman, Esquire. A true and correct copy of the Request For Loan Payoff and the responding email acknowledging receipt is attached as **Exhibit B** hereto. However, neither my bankruptcy counsel nor I have received the payoff information. It does not make sense that LAPFCU would agree to a carve out of some $78,000 from a debt of roughly $128,000 with the Trustee, but is relatively non responsive to my offer to satisfy the judgment lien in full.

7. I am prepared to transfer $40,000 to Debtor's bankruptcy estate for payment to unsecured creditors if my motion for relief from stay is granted.

8. I have not consented to the sale of the La Masina Court Property for less than what is owed to me.

9. I have not agreed to a carve out for unsecured creditors from the proceeds of sale I would receive from the La Masina Court Property.

10. I have not consented to any surcharge of the proceeds of sale I would receive from the La Masina Court Property.

11. I have personal knowledge of the facts stated herein, except where stated on information and belief, and where so stated, I am informed and believe that such facts are true and correct. If

called and sworn as a witness, I could and would competently testify to the above.

Executed this 2nd day of July 2025, at Los Angeles, California. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
MEHRAN JAVAHERIAN

EXHIBIT A

**Raymond H. Aver**

---

| | |
|---|---|
| **From:** | attybpn@aol.com |
| **Sent:** | Thursday, June 5, 2025 8:35 AM |
| **To:** | Raymond H. Aver |
| **Subject:** | Re: La Masina Court Residence - Payoff Demand |

Good morning,

We have received you email correspondence and we will get back to you as soon as we can.

Thank you,

Bruce P. Needleman, Esq.
LAW OFFICES OF BRUCE P. NEEDLEMAN
21250 Califa Street, Suite 201
Woodland Hills, CA  91367
(818) 715-7007
fax (818) 715-7090

On Wednesday, June 4, 2025 at 06:39:20 PM PDT, Raymond H. Aver <ray@averlaw.com> wrote:

Mr. Needleman:

Please see the attached time sensitive correspondence.

*Raymond H. Aver*

*Attorney at Law*



# AVER
## LAW FIRM

11849 West Olympic Boulevard

Suite 204

Los Angeles, California 90064

Tel: (310) 571-3511

email: ray@averlaw.com

Web: www.averlaw.com

*Certified Bankruptcy Specialist*
*State Bar of California, Board of Legal Specialization*

2

**Raymond H. Aver**

| | |
|---|---|
| **From:** | Raymond H. Aver |
| **Sent:** | Wednesday, June 4, 2025 6:39 PM |
| **To:** | attybpn@aol.com |
| **Subject:** | La Masina Court Residence - Payoff Demand |
| **Attachments:** | CCF_000227.pdf |

Mr. Needleman:

Please see the attached time sensitive correspondence.

Raymond H. Aver
Attorney at Law

## AVER
## LAW FIRM

11849 West Olympic Boulevard

Suite 204

Los Angeles, California 90064

Tel: (310) 571-3511

email: ray@averlaw.com

Web: www.averlaw.com

*Certified Bankruptcy Specialist*
*State Bar of California, Board of Legal Specialization*

1

LAW OFFICES OF RAYMOND H. AVER
A PROFESSIONAL CORPORATION
11849 WEST OLYMPIC BOULEVARD
SUITE 204
LOS ANGELES, CALIFORNIA 90025

TELEPHONE (310) 571-3511
E-MAIL RAY@AVERLAW.COM

FILE NO.: 3255.01

June 4, 2025

VIA email
attybpn@aol.com

Bruce P. Needleman, Esquire
Law Offices of Bruce P. Needleman
21250 Califa Street, Suite 201
Woodland Hills, California 91367-5045

Re:  **Request For Loan Payoff**

Dear Mr. Needleman:

I attempted to reach you today via phone and left a voice mail message.

This firm represents Mehran Javaherian.

Mehran Javaherian is the beneficiary under a junior deed of trust lien against the residential real property located at 24366 La Masina Court, Calabasas, California 91302 ("La Masina Court Residence").

Mehran Javaherian is interested in fully satisfying the judgment lien of the Los Angeles Police Federal Credit Union ("LAPFCU") which has been recorded against the La Masina Court Residence.

It is our understanding that the current balance of the debt secured by the LAPFCU lien is $128,382.31.

Please provide us with an itemized statement of the amount necessary to pay off the LAPFCU lien, including the per diem interest that accrues after the date of the statement. Please also provide us with payment instructions.

LAW OFFICES OF RAYMOND H. AVER
A PROFESSIONAL CORPORATION

Bruce P. Needleman, Esquire
June 4, 2025
Page 2

This matter is time sensitive, so your anticipated attention is appreciated.

Very truly yours,

LAW OFFICES OF RAYMOND H. AVER
A Professional Corporation

RAYMOND H. AVER

RHA/

EXHIBIT B

## REAL PROPERTY DECLARATION

I, (print name of Declarant) MEHRAN JAVAHERIAN _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

   a. ☒ I am the Movant.

   b. ☐ I am employed by Movant as (state title and capacity):

   c. ☐ Other (specify):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (see attached):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1_____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2_____.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (specify):

4. a. The address of the Property is:

   Street address: 24366 La Masina Court
   Unit/suite no.:
   City, state, zip code: Calabasas, California 91302

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Los Angeles County; Instrument No. 20230460230

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017    Page 6    F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence      b. ☐ Other residence

   c. ☐ Multi-unit residential           d. ☐ Commercial

   e. ☐ Industrial                f. ☐ Vacant land

   g. ☒ Other (*specify*): Residential, non-principal residence

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☒ Co-owner(s) (*specify*): Artur Nazaryan, a single man, and Hovannes Nazaryan, a single man, as joint tenants

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.

      The deed was recorded on (*date*) 03/29/2023  .

7. Movant holds a ☐ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 2____ .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 1____ .

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____ .

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 1,200,000.00 | $ | $ 1,200,000.00 |
| b. | Accrued interest: | $ 396,000.00 | $ 18,000.00 | $ 414,000.00 |
| c. | Late charges | $ 39,600.00 | $ 1,800.00 | $ 41,400.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ 18,245.60 | $ 5,000.00 | $ 23,245.60 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): 05/15/2025 | $ | $ | $ 1,678,645.60 |

   h. ☒ Loan is all due and payable because it matured on (*date*) 08/31/2024  

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) 12/05/2024  or ☐ none recorded.

   b. Notice of sale recorded on (*date*) 03/20/2025  or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 04/16/2025  or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) 06/04/2025  or ☐ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                  Page 7                  F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a.  Amount of current monthly payment as of the date of this declaration: $ 18,000.00 _____ for the month of May _____ 20 25 .

   b.  Number of payments that have come due and were not made: 23 . Total amount: $ 414,000.00 _____

   c.  Future payments due by time of anticipated hearing date (*if applicable*):

       An additional payment of $ 18,000.00 _____ will come due on (*date*) 06/01/2025 , and on the 1st day of each month thereafter. If the payment is not received within 10 days of said due date, a late charge of $ 1,800.00 _____ will be charged to the loan.

   d.  The fair market value of the Property is $ 4,850,000.00 _____ , established by:

       (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____ .

       (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____ .

       (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____ .

       (4) ☒ Other (*specify*):
       Declaration of Nancy Hoffmeier Zamora (chapter 7 trustee) in support of "Opposition To Motion To Compel Abandonment Of Real Property," Paragraph 15 [Docket #21]

   e.  **Calculation of equity/equity cushion in Property:**

       Based upon ☒ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | AmWest Funding Corp. | $ 3,000,000.00 | $ 3,000,000.00 |
| 2nd deed of trust: | Mehran Javaherian (Movant) | $ 1,200,000.00 | $ 1,678,645.60 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | Los Angeles Police Credit Union | $ | $ 123,685.75 |
| Taxes: | Los Angeles County Tax Collector | $ | $ 180,191.65 |
| Other: | Judgment Lien - U.S. of America | $ | $ 1,289,364.94 |

**TOTAL DEBT:** $ 6,473,057.84    (including a Hero (Home Energy Renovation Opportunity) loan with an approximate balance of $201,271.00

   f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 3a-3d and consists of:

       (1) ☒ Preliminary title report.

       (2) ☒ Relevant portions of the Debtor's schedules.

       (3) ☒ Other (*specify*): 2023-24 and 2024-25 Annual Property Tax Bills and Seller's Estimated Closing Stmt

   g.  ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ - 333,793.40 _____ and is 0 % of the fair market value of the Property.

   h.  ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
       By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ - 1,623,158.84 _____ .

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☒ Estimated costs of sale: $ 291,000.00 _____ (estimate based upon ____6__ % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                               $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                                         $[                              ]

TOTAL POSTPETITION DELINQUENCY:                                    $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (specify):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
        Chapter: _____ Case number: _____
        Date dismissed: _____ Date discharged: _____ Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
        Chapter: _____ Case number: _____
        Date dismissed: _____ Date discharged: _____ Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
        Chapter: _____ Case number: _____
        Date dismissed: _____ Date discharged: _____ Date filed: _____
        Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                       Page 10                                       F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

05/26/2025            MEHRAN JAVAHERIAN
Date                 Printed name                        Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                       Page 11                 F 4001-1.RFS.RP.MOTION

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 11849 West Olympic Boulevard, Suite 204, Los Angeles, California 90064.

The foregoing document described **"OPPOSITION TO 'MOTION FOR ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS (EXCEPT L.A. COUNTY HERO LIEN), SUBJECT TO OVERBID, AND APPROVING SURCHARGE FOR ADMINISTRATIVE FEES AND EXPENSES PER 11 U.S.C. §506(c)' MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION(S) AND  EXHIBIT(S) IN SUPPORT THEREOF"**; will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 2, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

  _X_    Service information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

  ___    Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 2, 2025**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Honorable Martin R. Barash
Bin outside Clerk's office - 1st Floor
    Judge's Copy temporarily suspended by General Order No. 20-02

  ____    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 2, 2025 | Raymond H. Aver | /s/ raymond h aver |
| Date | Name | Signature |

## SERVICE LIST

**VIA NEF**

- Raymond H. Aver     ray@averlaw.com, averlawfirm@gmail.com
- Nancy J Zamora (TR)    zamora3@aol.com, nzamora@ecf.axosfs.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Sanaz Sarah Bereliani     berelianilaw@gmail.com, chris@berelianilaw.com; r48595@notify.bestcase.com
- Anita Khachikyan    ak@khachlaw.com
- Bruce P. Needleman    attybpn@aol.com